State ex rel. Milwaukee S. & I. Co. v. Railroad Comm. 174 Wis. 458.

issues to be tried will be those raised by the allegations of the counterclaim and the reply, it will be a trial of the action begun by Bean and not of another action. While the counterclaim embraces a cause of action, a new action is not begun.

*By the Court.*——Let the writ issue as prayed in the petition.

ESCHWEILER, J., dissents.

STATE EX REL. MILWAUKEE SALES AND INVESTMENT COMPANY, Plaintiff, vs. RAILROAD COMMISSION and others, Defendants.

*May 6——June 21, 1921.*

*Constitutional law: Equal protection of the laws: Regulation of rents in particular counties: Validity: Classification: Basis.*

1. The provisions of both the federal and state constitutions guaranteeing equal protection of the laws were intended to safeguard the fundamental right of equality before the law and to prevent the enactment of a law which makes unjust discrimination by depriving one person of a right in dealing with his property which it grants another of the same class under like circumstances.
2. Though the guaranty of equal protection of the laws does not prevent the legislature from making classification of persons, occupations, or industries for special regulation if there are reasonable and proper economic, political, or social reasons for so doing, it does not justify denying to one class rights and privileges that are granted to another under the same conditions and circumstances.
3. Ch. 16, Laws 1920 (Special Session), enacted to meet the housing emergency resulting from the war, but which was to apply only to counties having a population of 250,000 or more, denies equal protection of the laws to landlords in those counties, since such emergency existed also in other counties; and the mere fact that more people were affected thereby in a large county does not furnish reasonable ground for separate legislation for such counties.

ORIGINAL ACTION in this court to determine the validity of the so-called "Rent Law."

On June 21, 1921, the following opinion was filed:

PER CURIAM. The law embodied in ch. 16, Laws of Special Session of 1920, commonly referred to as the "Rent Law," is held invalid upon the ground that it is special legislation prohibited by the constitution of Wisconsin. An opinion by the court will be filed hereafter.

VINJE and OWEN, JJ., dissent.

DOERFLER, J., took no part.

On July 13, 1921, the following opinion was filed:

Action brought in this court to enjoin the *Railroad Commission* from enforcing the provisions of ch. 16, Laws of 1920 (Special Session), against the plaintiff, a corporation of this state duly authorized and empowered to own real estate.

The plaintiff avers that it owns real estate in Milwaukee county and alleges that the *Railroad Commission* of Wisconsin is proceeding against *Oscar Brachman,* as the plaintiff's agent for the management of plaintiff's real estate in the city of Milwaukee and the county, under the powers conferred on the *Commission* by ch. 16, Laws of 1920 (Special Session), to coerce and compel him to comply with the provisions of such act. It is alleged that the *Commission* is about to determine what are reasonable rents for plaintiff's apartment building upon its real estate in such county for the purpose of enforcing such rents against plaintiff in leasing such property and to compel plaintiff to accept such rent on contracts heretofore made or hereafter to be made. Petitioner further alleges that such proceedings on the part of the *Railroad Commission* would greatly reduce and injure the value of plaintiff's property and deprive it of the free

State ex rel. Milwaukee S. & I. Co. v. Railroad Comm. 174 Wis. 458.

use and enjoyment thereof and of the right to freely contract in relation thereto and thus deprive plaintiff of the rights guaranteed to it by the state and federal constitutions.

The plaintiff demands that ch. 16, Laws of 1920 (Special Session), be declared void and of no force and effect. The *Railroad Commission* answered the allegations of the complaint and seeks to justify its proceedings under the provisions of the act above referred to. The plaintiff demurred to the defendant's answer upon the ground that the facts pleaded do not constitute a good defense to the action.

For the plaintiff there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *Irving A. Fish,* of counsel, all of Milwaukee, and oral argument by *Irving A. Fish* and *Joseph H. Marshutz.*

The *Attorney General* and *Winfield W. Gilman,* assistant attorney general, for the defendants.

SIEBECKER, C. J. The act (sec. 1) declares:

"The provisions of this act are made necessary by a public emergency growing out of the world war, resulting in such housing conditions in cities of this state that the freedom of contract in connection therewith has been impaired, and unjust, unreasonable and oppressive agreements for the payment of rent and for rental service have been and are now being exacted by landlords from tenants, which conditions seriously affect and endanger the public welfare, health and morals. It is also declared that this act is enacted as temporary emergency legislation and that it shall terminate on April 30, 1923, unless sooner repealed."

The act defines what is "rental property" and "service" in connection with such property, and other terms as used and employed in the act. By sec. 3 it is provided:

"All rents, charges, or other terms or conditions for the use or occupancy of rental property and all services in connection therewith shall be reasonable and just, and every unreasonable or unjust rent, charge, or other term or condition for the use or occupancy of rental property or service in connection therewith is prohibited and declared unlawful."

State ex rel. Milwaukee S. & I. Co. v. Railroad Comm. 174 Wis. 458.

By sec. 4 the *Railroad Commission* "is vested with power and jurisdiction to carry out the provisions and intent of this act and may do all things reasonably necessary and convenient in the exercise of such power and jurisdiction." By sec. 9 it is provided that:

"All rents or charges fixed by the commission shall be in force and *prima facie* lawful and all service, regulations, practices, terms and conditions prescribed by the commission shall be in force and shall be *prima facie* reasonable until finally found otherwise in an action brought for that purpose pursuant to the provisions of section 10. Such orders shall remain effective, notwithstanding any change in ownership or tenancy of the property affected thereby, unless and until the commission modifies or sets aside such orders upon complaint either of the owner or of the tenant."

The other provisions of the act make regulations for the enforcement of the act by the *Commission,* prescribe the procedure for this purpose, how proceedings before the *Commission* are to be instituted for review of the orders the *Commission* may make, what powers the *Commission* may exercise and the manner in which it is to exert and execute them. The act also prescribes that, when rents or charges collected or received by owners of rented property are in excess of those fixed by the *Commission,* an amount double the amount of such excess may be recovered in an action, together with the costs of the proceeding. There are other detailed provisions which need not be referred to for the purposes of this case.

This legislation is assailed as invalid upon the ground that it deprives the plaintiff of its private property and its freedom to contract with respect thereto, and thus deprives it of its liberty and its property and enjoyment thereof, and that it deprives it of the equal protection of the law as guaranteed it by the state and federal constitutions. The state asserts that the legislation is a proper exercise of the police power in the light of the emergency, which the legislature declared existed, respecting housing conditions conse-

quent upon the world war, and that such conditions were more acute in the larger centers of population and places immediately adjoining them than in the more sparsely settled communities. It is well known that similar legislation was enacted in other states and by Congress for the District of Columbia. In the view we take of this case it is not necessary to discuss the question whether the legislation pertains to a subject properly within the sovereign power of the state to regulate in the manner attempted in this act. This subject has recently received consideration at the hands of the federal supreme court, the court of appeals of the state of New York, and other courts, resulting in a divergence of views which we shall not attempt to state; they are fully and ably presented in the briefs of counsel for the respective parties. Assuming, without deciding, that the act deals with a subject properly within legislative control under the police power of the state and that an emergency for the regulation existed as declared by the legislature in the act, the question is presented: Did the legislature, in exerting its power in the manner prescribed by the act, violate any of the rights guaranteed the plaintiff by the federal and state constitutions? At the threshold of this inquiry the claim is made by the plaintiff that the act is invalid because it deprives it of the equal protection of the law. Equality of rights and privileges is the underlying purpose to be accomplished by our constitutional system of government. "If special privileges are granted, or special burdens or restrictions imposed in any case, it must be presumed that the legislature designed to depart as little as possible from this fundamental maxim of government." This principle was aptly stated by Mr. Cooley in his work on Constitutional Limitations (5th ed. p. 486) and approved by the court in *Cotting v. Kansas City S. Y. Co.* 183 U. S. 79, 22 Sup. Ct. 30, in the words following:

"Every one has a right to demand that he be governed by general rules, and a special statute which, without his

consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. . . . It is emphasized in that clause of the Fourteenth amendment which prohibits any state to deny to any individual the equal protection of the laws."

This principle of government has been held from an early date to be embodied in the constitution of this state. See *Bull v. Conroe,* 13 Wis. 233; *Durkee v. Janesville,* 28 Wis. 464; *Hincks v. Milwaukee,* 46 Wis. 559. The opinion of Mr. Chief Justice Dixon in *Phelps v. Rooney,* 9 Wis. 70, is approved by the court in later cases. The late Mr. Chief Justice Winslow, speaking for the court in *Black v. State,* 113 Wis. 205, 89 N. W. 522, on this subject declared:

"The emphatic protest against special privileges to any favored persons or class of persons may be found in varying terms in all of our constitutions. Our fathers came here to escape the reign of privilege, and they made equality before the law the very cornerstone of their plan of government. In our constitution it is thus expressed in sec. 1, art. I: 'All men are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness; to secure these rights, governments are instituted among men deriving their just powers from the consent of the governed.' This may be said to be somewhat vague and general,—somewhat in the nature of a rhetorical flourish; but when it is said that *all men equally free have the inherent rights of life, liberty, and the pursuit of happiness,* it is certain that it is not meant that some have or may have greater privileges before the law than others. The phrase must mean equality before the law if it means anything."

A law which makes unjust discrimination, which deprives one person of a right in dealing with his property and grants it to another of the same class under like circumstances and conditions, operates as a denial of the equal protection of the law and offends against the constitutional principles guaranteeing these rights. But it is urged that the legisla-

ture, under its power to classify persons and enact general laws to regulate the rights of each class, has acted upon sufficient and proper grounds in this respect by making this statute applicable only to counties having a population of 250,000 and over. It is well established that the legislature may make classifications of persons, occupations, or industries and select them for special regulation if there are reasonable and proper economic, political, or social reasons for doing so. The subject of classification has often been treated in the decisions of this court and received elaborate treatment in *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468. With reference to the constitutional rule of equal protection of the laws it was there stated:

"Such command does not require that all property or all persons shall be treated exactly alike, but permits separation of either into classes of property or of persons similarly conditioned or situated, having characteristics legitimately distinguishing the members of one class from those of another in respects germane to some general and public purpose and object of the particular legislation."

While this right to classify must be fully recognized it must nevertheless always be borne in mind that the equal protection of the laws is guaranteed, and that if any classification made in a statute seeking to regulate property and contract rights denies to one class rights and privileges which are granted to another under the same conditions and circumstances, it offends against the principle of equal protection of the law. It therefore becomes important to see in what respects, if any, lack of uniformity exists in the act before us. As above indicated, the legislature declared that the act was made necessary by a public emergency arising out of the world war, resulting in housing conditions in cities of this state which impaired the freedom of contracting in connection therewith and led to the exacting of unreasonable, unjust, and oppressive agreements for the pay-

ment of rents and rental services, which injuriously affects and endangers the public welfare, health, and morals. The fact is commonly known that the conditions found by the legislature did generally exist throughout this and other states. The evils resulting therefrom, and which this legislation seeks to remedy, were incident to the conditions wherever they existed and were equally pernicious in their effects upon tenants everywhere. It is urged, however, that the legislative judgment in applying the law only to the class of landlords operating the business in thickly settled communities necessarily implies that the resultant evils were found to be a greater menace to the public welfare, health, and morals in such communities than in the sparsely settled districts of the state. But can it reasonably be said that such is the fact? Do the evils enumerated in the act in fact affect the public differently in counties having 250,000 population and over than in those having a lesser population? It is a matter of common knowledge that the oppressive exactions denounced by the act are as objectionable in their effects upon the public in the smaller cities of the state as in the larger ones and that the evil produced no different conditions in the county of Milwaukee than in other counties of the state. True, a larger number of persons were affected in Milwaukee county than in any other county, but this in no way caused a different economic, social, or political condition in this county than in any other county of the state where the evil existed. We find nothing in the conditions and characteristics affecting persons and property of landlords and tenants embraced in this act that distinguishes those in one county from those of any other county of the state in any respects germane to the purposes of this act.

The classification made by the act fails in that it is not based on characteristics legitimately distinguishing the members of one class from those of the others in respects germane to the public purpose and object of this legislation,

and results in depriving the owners of "rental property" within the terms of the act of constitutional rights accorded owners of like property who are not subject thereto.   The result is that the liberty of the persons subject to the act has been infringed upon and the personal and property rights guaranteed them by the constitution have been discriminated against in a way which deprives them of the equal protection of the law.   Upon these grounds the act must be held to be invalid and of no effect.

*By the Court.*—The complaint must be held to ·state a good cause of action, and the members of the *Railroad Commission* of the state of Wisconsin are ordered to be restrained and enjoined from proceeding in any way to enforce the provisions of the act.

Vinje and Owen, JJ., dissent.

Doerfler, J., took no part.