PABST CORPORATION, Appellant, vs. CITY OF MILWAUKEE and another, Respondents.

*March 11—June 21, 1926.*

*Public utilities: Waterworks of city of Milwaukee: Fixing of rates of service: Regulation by railroad commission: Statutes on same subject: Repeal by implication.*

1. Under the public utility law (secs. 196.01 *et seq.,* Stats.) the water plant of the city of Milwaukee, constructed pursuant to ch. 475 of the Private and Local Laws of 1871, is a public utility, subject to the regulation and control of the railroad commission, and a new schedule of water rates must first be submitted to the commission before being put into effect. p. 352.

2. Where there are two affirmative statutes on the same subject, one will not repeal the other if both can stand together. p. 352.

3. The public utility law by its terms is made applicable to all utilities of the state whether publicly or privately owned, and, repeals by implication not being favored, ch. 279 of the Laws

of 1919, which was a revision of ch. 475 of the Private and Local Laws of 1871, and devoted largely to perfecting the administrative details of management, does not exempt the utility from regulation by the railroad commission.   p. 354.

4. Any attempt to classify cities according to population with reference to the making of water rates must fail because it is not based on characteristics legitimately distinguishing the members of one class from those of another with respect to the public purposes sought to be accomplished in the establishment and regulation of utility rates.   p. 355.

5. The common council of the city of Milwaukee, in fixing the water rates to be charged its citizens, acts for the city in its private or proprietary capacity.   p. 356.

APPEAL from an order of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge.   *Reversed.*

Appeal from an order overruling demurrer to defendants' answer.   Pursuant to the provisions of ch. 475, Private and Local Laws of 1871, the city of *Milwaukee* constructed its own waterworks and has since that time operated the same, supplying the city and its inhabitants with water for all public and private purposes.   Sec. 24 of ch. 475 gave the board in charge of such waterworks the power to make "by-laws, rules and regulations, fixing uniform water rates to be paid for the use of water furnished by the said waterworks," which by-laws had no "force until submitted to and approved by the said common council" of the city.

*Milwaukee* is the only city of the first class in Wisconsin. Ch. 279, Laws of 1919, provides that the commissioner of public works in cities of the first class shall have the power to "make by-laws, rules and regulations, fixing uniform water rates to be paid for the use of water furnished" by municipal water plants, which by-laws shall have no "force until submitted to and approved by the common council of such city."

On January 1, 1921, the city of *Milwaukee* put in force a new schedule of water rates which materially increased the rates in effect when the public utility law was enacted in 1907.   This schedule of rates was prepared by the com-

missioner of public works and approved by the common council of the city. This new schedule of rates was never submitted to the railroad commission nor was notice of this change in rates given to the commission as required by sec. 196.20 of the Statutes, which provides that no change in rates shall be made after the passage of the public utility law unless notice of such proposed change is given to the railroad commission.

This action was begun to restrain the collection of rates in excess of those in force when the public utility law was enacted and to recover treble the amount of rates paid in excess of those in force when the law was passed, pursuant to the provisions of sec. 196.64 of the Statutes. The defendants answered admitting that the increased rates had never been submitted to the railroad commission, denying that the water plant of the city of *Milwaukee* was a public utility subject to regulation by the commission, and alleging that ch. 279, Laws of 1919, gave the city full power to fix its own water rates without submitting the same to the commission. The plaintiff demurred to the answer on the ground that it did not state facts sufficient to constitute a defense.

For the appellant there was a brief by *Lines, Spooner & Quarles* and *Glicksman, Gold & Corrigan,* attorneys, and *F. E. Jenkins* and *M. K. Whyte,* of counsel, all of Milwaukee, and a reply brief by *Lines, Spooner & Quarles* and *Glicksman, Gold & Corrigan;* and the cause was argued orally by *Louis Quarles* and *Charles B. Quarles*.

For the respondents there was a brief by *John M. Niven,* city attorney, and *Walter J. Mattison,* assistant city attorney, and oral argument by *Mr. Mattison.*

The following opinion was filed April 6, 1926:

STEVENS, J. The law placing public utilities under the regulation of the railroad commission was passed in 1907.

It provided that the "term 'public utility' . . . shall mean and embrace . . . every town, village, or city that now or hereafter may own, operate, manage, or control any plant" furnishing water to the public. Sec. 196.01, Stats. At the time of the passage of this law *Milwaukee* was a city which owned and operated its own water plant. Language could not have been chosen which would have evidenced a clearer legislative intent to subject the *Milwaukee* municipal water plant to the regulation of the railroad commission. An examination of the published reports of the commission disclosed the fact that the commission has exercised the same degree of regulation and control over municipal water plants that it has exercised over privately owned utilities. But there is no need to resort to the practical construction given this law in its administration, because the act so clearly expresses the legislative intent to declare that every municipal water plant is a public utility subject to the regulation and control of the railroad commission.

There is nothing in sec. 371.09 or 371.10, Stats., which places the *Milwaukee* plant outside the pale of regulation by the commission. Sec. 371.09 provides that such statutes as the public utility law shall be enforced in all cities of the state when not inconsistent with charter provisions. When such statutes are at variance with city charters, the charter shall prevail "unless a different intention be plainly manifested." By so defining a public utility as to include "every" city that owns and operates its water plant, the legislature has plainly manifested an intention to make the statute apply to the *Milwaukee* water plant, even if regulation by the commission be at variance with the provisions of the city charter. In determining whether the provisions of the utility law were in conflict with the charter, we must apply the rule that "where there are two affirmative statutes on the same subject, one will not repeal the other if

both can stand together." *State ex rel. Boddenhagen v. C., M. & St. P. R. Co.* 164 Wis. 304, 307, 159 N. W. 919. The public utility act did not expressly repeal any portion of the act establishing the *Milwaukee* municipal water plant. It left all portions of the prior act in force. After the passage of the utility law the city still had the power to initiate changes in its water rates, just as the directors of a private utility had the power to initiate new rates. But such rates when initiated by a city or by a privately owned utility are not effective unless the ten-day notice of the proposed change in rates is given to the railroad commission as required by sec. 196.20 of the Statutes.

The fact that the city of *Milwaukee* owned and operated its water plant when the public utility law was passed in 1907 does not exempt this municipal plant from regulation by the commission. A public utility, as defined by sec. 1797m—1, Stats. (now sec. 196.01), included "every . . . city that *now* or hereafter may own" or operate a plant for furnishing water to the public. The use of the word "now" disclosed a legislative intent to make the public utility act apply to all plants owned and operated by cities in 1907 when the utility act was passed. Having declared that all water plants owned and operated by cities in 1907 were public utilities, it was not necessary to enact special provisions relating to such plants. Being public utilities, these municipal plants were subject to the same provisions of the statutes that apply to all other public utilities. There is no basis for any classification in the matter of rate regulation which puts plants owned by cities in 1907 in a different class from those which have been constructed or purchased by municipalities after that date. The defendants concede that all plants constructed or acquired by municipalities after the enactment of the utility law were subject to regulation by the commission. There is no basis in

reason for a classification that makes regulation by the commission dependent on the date when a utility plant was acquired by a municipality. A classification upon such a basis would be purely arbitrary and without reason.

Ch. 279, Laws of 1919, does not evidence a legislative intent to exempt the *Milwaukee* water plant from regulation by the commission. This chapter is a revision of the act of 1871, under which the water plant was originally built. The act of 1919 is devoted largely to perfecting administrative details with reference to the operation and management of the plant. The only provision as to the rates is the one that continues in force the act of 1871 in almost the identical language of the prior act. This provision of the act of 1871 as to the making of rates was never repealed. It was in force when the act of 1919 was passed. Under it the city had the power to initiate rates before the act of 1919 became a law as well as after that act was passed, subject, however, at all times to regulation by the commission. The act of 1919

"presents an instance where the amendment does not change the original provision, but adds others. Under such circumstances the portion so continued is not considered as repealed and again enacted, but as having existed and continued from its original enactment. It is manifest . . . that the portions retained continued in force from their first enactment, and that the new and changed portions took effect from the time of the amendatory act. The rule that a re-enactment of an existing statute in substantially the same words operates to continue it is well settled and has been frequently followed by this court." *State ex rel. Ohlenforst v. Beck,* 139 Wis. 37, 39, 40, 119 N. W. 300. See, also, *Dallmann v. Dallmann,* 159 Wis. 480, 486, 149 N. W. 137. "Such re-enactment worked no change in the existing law, but simply continued the situation as it was before." *Milwaukee v. U. S. F. & G. Co.* 144 Wis. 603, 610, 129 N. W. 786.

The situation presented is one where both the act of

1919 and the public utility law were in force. Neither conflicted with the other. Both were applicable to the establishment of water rates of the city of *Milwaukee*. Ch. 279, Laws of 1919, does not expressly repeal any provision of the public utility law. Repeals by implication are not favored. The public utility law by its express terms is made applicable to all utilities of the state whether publicly or privately owned.

There is no real or substantial difference between the water plant of *Milwaukee* and the waterworks owned by other cities in Wisconsin which could be made the basis of a classification which would exempt *Milwaukee* from the regulation of its water rates by the railroad commission, while every other municipal water plant of the state is subject to such regulation. It cannot be said with reason that the fact that a larger number of people live in cities of the first class makes the establishment of water rates in cities of that class such a different problem from the making of rates in other cities as to furnish a reasonable basis for a classification that is germane to the purposes of the law regulating utility rates. The fact that a larger number of people are affected by the water rates in *Milwaukee* than in any other city of the state in no way presents a different economic, social, or political condition or in any way distinguishes *Milwaukee* from the other cities of the state in any respect germane to the making of just and reasonable water rates. Any attempt to classify cities according to population with reference to the making of rates must fail because it is not based on characteristics legitimately distinguishing the members of one class from those of another with respect to the public purposes sought to be accomplished in the establishment and regulation of utility rates. *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm.* 174 Wis. 458, 465, 183 N. W. 687.

Nearly twenty years of regulation of utility rates by the

railroad commission has demonstrated the wisdom of the legislative plan of subjecting the rates of all utilities, whether publicly or privately owned and operated, to the supervision and control of the railroad commission aided by its staff of experts whose accumulated knowledge with reference to the problems connected with the fixing of rates has been one of the chief factors that has stabilized rates in Wisconsin and tended to make them just and reasonable both to the public and to the utility. The lack of such expert technical knowledge on the part of those who acted for municipalities in establishing rates before the passage of the utility law was one of the chief reasons which led the legislature to take the regulation of rates out of the hands of municipal authorities and to vest that power in the commission. Successive legislatures have expressed their approval of this plan of regulation by the commission through amendments extending the powers of the commission and perfecting the statutes providing for the regulation of public utilities. We have found no legislative act which evidences an intent to exempt any utility from such regulation, unless it be ch. 279, Laws of 1919. In order to change this well established policy of regulation extending to every public utility in the state, the court must find such legislative intent expressed in the act which is alleged to make such change. The court finds no such intent expressed in ch. 279.

"The function of a city in selling and distributing water to its citizens is of a private nature." *Piper v. Madison,* 140 Wis. 311, 314, 122 N. W. 730. In fixing the rates to be charged to the citizens of *Milwaukee* the common council was acting for the city in its private or proprietary capacity. The fixing of the rates was a necessary part of the business management of the private or proprietary undertaking on which the city embarked when it established its own water plant.

*By the Court.*—The order of the circuit court overruling the demurrer to the answer is reversed, and the cause remanded for further proceedings.

The respondents moved for a rehearing.

In support of the motion there was a brief by *John M. Niven,* city attorney, *Clifton Williams,* special assistant city attorney, and *Walter J. Mattison,* assistant city attorney.

In opposition thereto there was a brief by *Lines, Spooner & Quarles* and *Glicksman, Gold & Corrigan,* all of Milwaukee.

The motion was denied, with $25 costs, on June 21, 1926.