CHRISTOPH and others, Appellants, vs. CITY OF CHILTON, Respondent.    [Detachment of agricultural lands.]

*May 12—October 13, 1931.*

For the appellants there were briefs by *Fox & Fox* of Chilton, and oral argument by *L. P. Fox*.

For the respondent there were briefs by *George M. Goggins* of Chilton, attorney, and *Olin & Butler* of Madison of counsel, and oral argument by *R. M. Rieser* of Madison.

A brief was also filed by *A. J. Whitcomb* of Oconto as *amicus curiæ*.

The·following opinions were filed June 12, 1931:

NELSON, J. So much of sec. 62.075, Stats., as is material to an understanding of this controversy is as follows:

*"Cities, detachment of farm lands.* (1) When land used for agricultural purposes of an area of two hundred acres or more contiguous to the boundary of any city of the fourth class, whether of one or more farms, which shall have been within the corporate limits of such city for twenty years or more, and during all of said time shall have been used for agricultural purposes, the circuit court of the county in which such land is situated shall enter judgment detaching such land from such city and annexing it to an adjoining town or towns, and such detachment and annexation thereof shall become effective for all purposes on the first day of January next thereafter."

The city of Chilton is a city of the fourth class. No question is raised as to the correctness of the procedure or

as to the lands being contiguous to the boundary and having been used for agricultural purposes for twenty years or more while within the corporate limits of the city of Chilton. The only question therefore which requires consideration is whether ch. 353 of the Laws of 1929 violates secs. 1 and 22 of art. I of the constitution of the state of Wisconsin and the Fourteenth amendment to the constitution of the United States. The court below held that this law is unconstitutional, void, and of no effect.

In view of the provisions of both the constitutions of the state of Wisconsin and of the United States and in view of the very spirit of our governmental institutions, it seems clear to us that this law violates both the uniformity and equality provisions of our constitutions and is void because based on a classification which is arbitrary and unreasonable.

A careful analysis of this law shows that it is applicable only to two hundred acres or more of agricultural lands, contiguous to the boundary, within the limits of cities of the fourth class, which have been within the corporate limits of such cities for twenty years or more and have been used during all of that time for agricultural purposes. It clearly applies to agricultural lands within cities of the fourth class and to nothing else.

The specific purpose which the legislature had in mind in enacting this law is not stated in the law itself, but it is perfectly obvious that the only purpose of the law is to relieve agricultural lands located within cities of the fourth class from the burdens of city taxation. That such was the purpose of the act gives rise to no question. Such purpose is conceded by both petitioners and respondent.

The effect of this law is to grant to owners of two hundred acres or more of agricultural lands located · in cities of the fourth class the right or privilege to secede or to become detached from such cities, which right or privilege

is denied to the owners of lands of like character, area, and location situated in cities of the first, second, or third classes.

May the legislature arbitrarily enact a law applicable to a class to whom is granted special privileges while denying the same rights to others who are in all respects similarly situated? That the legislature may make classifications of persons, occupations, or industries and select them for special regulation, if there are reasonable and proper economic, political, or social reasons for so doing is well established. *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm.* 174 Wis. 458, 183 N. W. 687; *State v. Whitcom,* 122 Wis. 110, 99 N. W. 468. But classifications of persons or property must be based upon reasonable differences or distinctions which distinguish the members of one class from those of another in respects germane to some general and public purpose or object of the particular legislation. *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm., supra.* While the legislature, in proper cases, clearly has the right to classify persons, property, occupations, or industries, it must always be borne in mind that the equal protection of the laws is guaranteed, and that if any classification made by a statute grants to one class rights or privileges which are denied to another class under the same or substantially similar conditions, it offends against the principle of equal protection of the law. As was held in *Wisconsin Asso. of Master Bakers v. Weigle,* 167 Wis. 569, 168 N. W. 383, the uniformity and equality rule of the constitution permits separation into classes if they have characteristics legitimately distinguishing the members of one class from another in respects germane to some public purpose.

That both the constitutions of the state of Wisconsin and of the United States condemn laws which grant special privileges to a favored class cannot be doubted. That the very spirit of our institutions is against the granting of special

privileges to a favored class is indeed elementary. As was said in *Black v. State,* 113 Wis. 205, at p. 218 (89 N. W. 522) :

"The emphatic protest against special privileges to any favored persons or class of persons may be found in varying terms in all of our constitutions. Our fathers came here to escape the reign of privilege, and they made equality before the law the very corner-stone of their plan of government. In our own constitution it is thus expressed, in sec. 1, art. I : 'All men are born *equally* free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed.' This may be said to be somewhat vague and general,—somewhat in the nature of a rhetorical flourish; but when it is said that all men equally free have the inherent rights of life, liberty, and the pursuit of happiness, it is certain that it is not meant that some have or may have greater privileges before the law than others. The phrase must mean equality before the law if it means anything. The idea is expressed more happily in the Fourteenth amendment, where it is said that no state shall deny to any person within its jurisdiction the 'equal protection of the law.' . . . There may indeed be classification; and if the classification be founded upon real differences, affording rational grounds for distinction, such classification will not violate the rule of uniformity and equality."

As before stated, the clear effect of ch. 353 is to grant to owners of two hundred acres or more of agricultural lands within cities of the fourth class, privileges of detachment which are denied to owners of similar lands located in cities of all other classes.

Is there a difference or distinction between agricultural lands located in cities of the fourth class and similar lands located in cities of other classes that is germane to the purpose of the law? We think not. Is there an economic distinction between agricultural lands located in cities of the

fourth class and lands located in cities of the other classes? We can conceive of no proper or reasonable distinction which can operate as a basis for the classification attempted by this act. No possible distinction has been suggested by the petitioners except the one that agricultural lands located in the larger cities have market advantages which are superior to those enjoyed by owners of agricultural lands in cities of the fourth class and that this claimed distinction alone affords a reason for permitting agricultural lands to be detached from cities of the fourth class, while requiring similar lands in cities of other classes to remain therein subject to the burdens of city taxation. As we view the matter there is no economic difference between agricultural lands located in cities of the fourth class and similar lands located in cities of other classes that can operate as a reasonable basis for classification justifying the granting of privileges to those of the special class and denying them to owners of lands similarly located in cities of other classes.

That ch. 353 of the Laws of 1929 is unconstitutional under the holdings of this court seems to be entirely free from doubt. A law which guarantees privileges only to those residing in cities of a certain class and denies such privileges to others cannot, it seems to us, be considered constitutional. In *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm., supra,* the so-called "rent law" of the special session of 1920 was declared unconstitutional because it applied only to counties having a population of 250,000 or more and did not apply to all counties of the state. Attempt was made to uphold that act on the ground that a larger number of persons were affected in Milwaukee county by the unjust exactions of landlords than in other counties throughout the state, but the court said (p. 465) :

"True, a larger number of persons were affected in Milwaukee county than in any other county, but this in no way caused a different economic, social, or political condition in

this county than in any other county of the state where the evil existed. We find nothing in the conditions and characteristics affecting persons and property of landlords and tenants embraced in this act that distinguishes those in one county from those of any other county of the state in any respects germane to the purposes of this act. The classification made by the act fails in that it is not based on characteristics legitimately distinguishing the members of one class from those of the others in respects germane to the public purpose and object of this legislation, and results in depriving the owners of 'rental property' within the terms of the act of constitutional rights accorded owners of like property who are not subject thereto. The result is that the liberty of the persons subject to the act has been infringed upon and the personal and property rights guaranteed them by the constitution have been discriminated against in a way which deprives them of the equal protection of the law. Upon these grounds the act must be held to be invalid and of no effect."

In *Pabst Corporation v. Milwaukee,* 190 Wis. 349, 208 N. W. 493, it was sought under certain statutes, ordinances, and charter provisions to exempt the water plant of the city of Milwaukee from regulation by the railroad commission. Attempt was made to show that there was a difference between the water plant of the city of Milwaukee and water plants owned by other cities in Wisconsin which could be made the basis of a classification which would exempt Milwaukee from the regulation of its water rates by the railroad commission, while every other municipal water plant was subject to such regulation. But the court disposed of such contention as follows (p. 355) :

"It cannot be said with reason that the fact that a larger number of people live in cities of the first class makes the establishment of water rates in cities of that class such a different problem from the making of rates in other cities as to furnish a reasonable basis for a classification that is germane to the purposes of the law regulating utility rates. The fact that a larger number of people are affected by the

water rates in Milwaukee than in any other city of the state in no way presents a different economic, social, or political condition or in any way distinguishes Milwaukee from the other cities of the state in any respect germane to the making of just and reasonable water rates. Any attempt to classify cities according to population with reference to the making of rates must fail because it is not based on characteristics legitimately distinguishing the members of one class from those of another with respect to the public purposes sought to be accomplished in the establishment and regulation of utility rates."

In *State ex rel. Hickey v. Levitan,* 190 Wis. 646, 210 N. W. 111, ch. 389 of the Laws of 1925 was declared to be unconstitutional because it limited the exemption therefrom to local co-operative organizations composed of members *residing in the same county* and because it did not apply equally to all similarly situated and was therefore class legislation and invalid. In *Watts v. Rent-a-Ford Co.,* recently decided by this court (*ante,* p. 140, 236 N. W. 521, 237 N. W. 276), it was held that sec. 85.215 of the Statutes was unconstitutional and void because it applied only to persons renting motor vehicles within the cities of this state and did not apply to persons so engaged in villages; that such law imposed upon citizens residing in cities burdens to which citizens of villages were not subjected, and denied to them equality of rights and privileges.

These cases seem clearly to dispose of petitioners' contention that the classification attempted by ch. 353 is reasonable because a larger number of owners of purely agricultural lands are found in cities of the fourth class than in cities of the second or third classes.

It may be well to point out that ch. 353 is not in any sense, as the court views it, an attempt to classify cities or the powers to be exercised by them. It clearly gives no power or authority to cities of the fourth class; it simply gives to owners of two hundred acres or more of agricul-

tural lands found therein, privileges which are special as to them, and denies to the owners of two hundred acres or more of similar lands located in cities of other classes, equal rights of detachment.

Petitioners strongly rely on *State ex rel. Zilisch v. Auer,* 197 Wis. 284, 221 N. W. 860, 223 N. W. 123. In that case the constitutionality of sec. 40.85 of the Statutes of 1925 was challenged. This law gave to the owners of territory adjoining another existing school district, and lying outside of the limits of a city or village, when located within a school district maintaining a high school other than a union free high school, and consisting of territory both within and without the corporate limits of any city or village, the right to detach such territory from said district. This law obviously applies uniformly throughout the state and is in no sense violative of the uniformity or equality provisions of the constitution. The constitutionality of that law was attacked because violative of sec. 3 of art. X of the constitution of the state of Wisconsin. No question was raised as to its not complying with the uniformity and equality provisions of our constitutions. As we view the holding in that case it has no controlling bearing on the question raised in this.

This court is in entire sympathy with the purpose of the legislature to free purely agricultural lands not required for city development or extension, from the burdens of city taxation; but such a law, in order to be valid, must apply to agricultural lands similarly located in all cities of the state to the end that the constitutional provisions as to uniformity and equality shall not be violated.

In the view we take of this case we deem it unnecessary to decide whether charter ordinance No. 2 enacted by the city of Chilton is effective to render sec. 62.075 inapplicable to the city of Chilton.

*By the Court.*—Judgment affirmed.

Owen, J. (*dissenting*). The decision of the court holds sec. 62.075, Stats., void, as being special or class legislation. Whatever infirmities there may be in this legislation, I cannot agree that it is offensive to the equal protection clauses of the federal and state constitutions.

The court views the law as one merely dealing with agricultural lands located in cities, and that the special privilege extended to such lands located within cities of the fourth class results in a denial of the equal protection of the law to similar lands located in cities of àll other classes. I regard the law as one germane to the purposes of city government and one affecting the charters of cities of the fourth class. As the legislation of this state has classified cities according to population, the propriety of which classification has been recognized for more than forty years, I think that that fact alone settles the validity of this legislation. If this statute deals with a subject germane to the purposes of city government, it need not affect all cities alike. It is sufficient to satisfy the requirements of the equal protection clauses of our constitution if it applies to all within the class. Whether the legislation may permit the withdrawal of agricultural lands from cities of the fourth class while denying it to cities of all other classes, depends upon whether it relates to a question germane to city government.

Granting the propriety of the classification, each class of cities stands distinct and separate, and legislation with reference to one is not to be condemned, or even tested, with reference to the question of whether such legislation applies to cities of any other class. This statement of course is to be restricted to legislation dealing with matters germane to city government. The fundamental necessity of a city is that it have a charter. That is its organic law. One of the first requirements of the charter is that the territory which shall be included within the city be specified. The extent and character of the territory which may be subjected to the

burdens of city government is a matter of legislative discretion. The boundaries of a city are therefore an essential and fundamental part of every city charter. This has been twice determined by this court. *Smith v. Sherry,* 50 Wis. 210, 6 N. W. 561; *State ex rel. Shawano v. Engel,* 171 Wis. 299, 177 N. W. 33. As in the first instance the legislature may determine the extent to which agricultural lands may be included within the boundaries of any class of cities as a part of their charters, so it may determine how such agricultural lands may be detached from said cities when time has demonstrated that they are not in any sense the beneficiaries of city government, and that their retention within city limits imposes upon them an unjust burden for the support of city government. Because this is a matter germane to the city charter, the legislature may prescribe one regulation for cities of one class and an entirely different regulation for cities of any other class. It is not limited in its special treatment to those matters or features of city government with reference to which the propriety of special treatment is apparent. The power of special treatment extends to every feature of the city charter and to every subject germane to the purposes of city government, even though it be difficult to see any distinction justifying different treatment of special subjects.

While in a narrow view this law deals with agricultural lands included within cities of the fourth class, in a broader sense it deals with the charters of such cities. It provides for a change of the boundaries. It provides for the detachment of lands from such cities which should not be burdened with the expense of maintaining the government of such cities. Because such cities constitute a legitimate class, no law germane to the charters of such cities or the government thereof can be condemned as special legislation because it does not apply to cities of all other classes. It deals equally and justly with all similar situations in cities of the fourth class. Upon well recognized principles re-

ferred to in the majority opinion, the law is not to be condemned because it does not apply to like situations existing in cities of other classes. While I think it would not be difficult to sustain this law so far as this attack upon it is concerned upon other considerations, the reasons already stated seem to me to be so conclusive that I shall not indulge in further discussion.

I am authorized to state that Mr. Justice FRITZ and Mr. Justice WICKHEM concur in the foregoing dissent.

A motion for a rehearing was denied, with $25 costs, on October 13, 1931.