DOERING, Respondent, vs. SWOBODA, Mayor, and others, Appellants.

*February 9—March 6, 1934.*

For the appellants there was a brief by *John R. Brown,* district attorney of Racine county, and *O. M. Edwards* of Racine, attorneys for John R. Brown and Miles A. Hulett; *Cornelius Colbert* of Racine, attorney for William J. Swoboda, Cornelius Colbert, and Grover C. Lutter; and *Walter D. Corrigan, Sr.,* and *A. C. Backus,* both of Milwaukee of counsel, and oral argument by *Mr. Corrigan.*

For the respondent there was a brief by *Wilbershide & Baumblatt* of Racine, and oral argument by *L. P. Baumblatt.*

NELSON, J. The complaint alleges in substance that the plaintiff is a resident of this state; that he has conducted a retail jewelry business in the city of Racine for several years; that on October 5, 1933, he duly applied to the mayor of Racine for a permit to conduct an auction sale of his stock of jewelry; that thereafter he paid to the city treasurer the sum of three hundred dollars for the purpose of licensing a

non-resident auctioneer to conduct the auction; that he had had such auctioneer furnish a bond which was approved by the city treasurer and that he had otherwise complied with all of the provisions of said ordinance relating to the conduct and inspection of auction sales; that he had paid a fee of twenty-five dollars for such permit; that thereupon a license had been duly granted to him for a term of one year from October 5, 1933, permitting him to conduct an auction in his place of business; that on October 7, 1933, he had proceeded to conduct an auction sale of his said stock and in so doing had duly complied with the laws of the state of Wisconsin and the ordinances of the city of Racine; that sec. 10.05 (15) of the ordinances, which provides:

"Sales, by public auction, of the stock of any person, firm or corporation, shall be held on successive days, Sundays and legal holidays excluded, and shall continue not more than thirty days in all within the period of one year. And no such auction shall be held between the hours of six p. m. and eight a. m. of the following day,"

and sec. 130.07 (1), 1933 Stats., which provides:

"*Auction sales at night, limitation.* (1) No person, firm or corporation shall sell or dispose of or offer for sale at public auction, between the hours of six o'clock in the evening and eight o'clock the following morning, any gold, silver, plated ware, precious or semi-precious stones, watches, clocks or jewelry of any nature whatsoever,"—

are unconstitutional and void; that he desires to conduct the auction sale of his stock of jewelry after the hour of six o'clock and until approximately ten or eleven o'clock in the evening of each day for a period of thirty days from October 7, 1933, but that he has been advised and warned that if he attempts to do so the mayor of Racine will revoke his permit, that he will be subject to arrest and fine, and that he will be arrested by the sheriff of Racine county and subject to the forfeiture provided by law; that he has no de-

sire to violate either the laws of the state or the ordinances of the city, but in the event he follows the advice of his counsel and treats as null and void the provisions of sec. 130.07 of the statutes and sec. 10.05 (15) of the ordinances and conducts his auction sale after six o'clock in the evening, he verily fears that he will be subject to prosecution, to a multiplicity of suits and the revoking of his license, all to his serious inconvenience and handicap in the conduct of his business, and that he has no remedy at law.

An order signed by a court commissioner, and served with the complaint, required the defendants to show cause why an injunction should not issue restraining the defendants from interfering with the plaintiff's conducting an auction sale, etc., for a period of thirty days from the 7th day of October, 1933, between the hours of six p. m. and eight a. m. Hearing was promptly had on the order to show cause and the court held that sec. 130.07, Stats., and sec. 10.05 (15) of the ordinances were unconstitutional and void and enjoined the defendants from interfering with the plaintiff's auction. Subsequently the defendants demurred to the complaint and the court overruled the demurrers.

The plaintiff first contends that since more than thirty days have elapsed since October 7, 1933, and since the time has now expired during which the plaintiff might hold an auction sale under his permit or license, all questions involved in this litigation are moot. It is, of course, elementary "that courts sit only to decide actual controversies, and not to answer moot questions of law or fact, nor to declare abstract principles or rules of law not applicable to issues or controversies" (*Hogan v. La Crosse,* 104 Wis. 106, 80 N. W. 105); that "this court (will not) entertain an appeal unless the appellant has an existing right which the order or judgment appealed from, if erroneous, has substantially prejudiced" (*Lamoreux v. Williams,* 125 Wis.

543, 104 N. W. 813). It was recently held that an order modifying a judgment of divorce as to the technical custody of a child for a limited period was not moot although the period had expired at the time the appeal was heard. *Smith v. Smith,* 209 Wis. 605, 245 N. W. 644. The present action involves the constitutionality of a statute which declares the public policy of this state as to the holding of jewelry auctions after six o'clock in the evening and also an injunction which restrained certain officers, whose duty it is to enforce the laws, from interfering with the plaintiff in conducting an auction, contrary to the express provisions of the law. While the injunction did not specifically enjoin the district attorney and sheriff from *prosecuting* the plaintiff for violating sec. 130.07, we think it clearly had that effect. Hence the right of the state effectively to enforce ch. 130 has been questioned. If, under the circumstances, the questions involved in this controversy must now be held to be moot, then it will be exceedingly difficult, if not impossible, to find a way in which the constitutionality of sec. 130.07 may be tested, for it appears that such an auction may continue for only thirty successive days during any year and that all that need be done by one desirous of holding such an auction, contrary to the prohibitions of the statute, is to start to conduct it after six o'clock and, when threatened with prosecution, obtain an injunction, upon the authority of the decision of the court below, continue the auction for a period of thirty days and thereafter assert that the controversy is moot. If such is the law, review by this court can be continually and successfully evaded. In this action it is the plaintiff who asserts that the controversy is moot. In another action brought in a different court the law might be held to be constitutional, in which event the plaintiff would be denied the right to have a review of such holding by the defendants therein asserting that the question is moot.

Such situations cannot but give rise to confusion, embarrassment, and uncertainty as to the duty of district attorneys with respect to the enforcement of this law.

We confess that a careful search for authorities has brought to light no case in which an identical situation has existed.

As to whether appellate courts will determine controversies which are otherwise moot but in which questions of great public importance are involved, the authorities are not in harmony. 3 Corp. Jur. p. 359, § 113. But many courts have retained and determined such controversies. The New York court of appeals in an election case, which involved questions relating to an election that had already been held, and which therefore were of no practical importance to the parties, retained the case for decision to prevent embarrassment in the future from conflicting judicial opinions of the lower courts. *Matter of Madden,* 148 N. Y. 136, 42 N. E. 534. Later on in *Matter of Fairchild,* 151 N. Y. 359, 45 N. E. 943, the court retained a similar action for determination of the questions therein for the reasons that the questions were sufficiently important and a decision on the merits would prevent future embarrassment in the congressional district to which the controversy related. *Barrs v. Peacock,* 65 Fla. 12, 61 South. 118, and *State ex rel. Railroad Comm'rs v. Southern Tel. & Const. Co.* 65 Fla. 67, 61 South. 119, are authority for the proposition that an appellate court may retain for determination questions properly presented which involve the duties and authority of state officials, and which are of general interest to the public. In *State ex rel. Dakota Trust Co. v. Stutsman,* 24 N. Dak. 68, 139 N. W. 83, answering the contention that the controversy therein was moot, the court stated:

"The questions involved, however, are of so great public interest, and the real merits of the controversy are still so unsettled, that we can and will consider the questions involved." (Citing cases.)

In *Riley v. Bell,* 184 Ind. 110, 109 N. E. 843, it was intimated that if there had been involved in that case an important matter such as the proper construction of an existing public election law a different conclusion might have been reached. In *Boise City Irr. & Land Co. v. Clark,* 131 Fed. 415, contention was made that since the period had expired for which the rate in question had been fixed, the case was moot. It was there said:

"It is contended on the part of the appellees that, as the period for which the rate in question was fixed has expired, the case has become but little, if any, more than a moot case; but the courts have entertained and decided such cases heretofore, partly because the rate, once fixed, continued in force until changed as provided by law, and partly because of the necessity or propriety of deciding some question of law presented which might serve to guide the municipal body when again called upon to act in the matter."

In *Southern Pacific Terminal Co. v. Interstate Commerce Comm.* 219 U. S. 498, 31 Sup. Ct. 279, it is held that a case is not moot where interests of a public character are asserted by the government under conditions that may be immediately repeated, merely because the particular order involved has expired. That case involved an order of the Interstate Commerce Commission which had expired. The court said:

"The questions involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at bar) and their consideration ought not to be, as they might be, defeated, by short term orders, capable of repetition, yet evading review, and at one time the government and at another time the carriers have their rights determined by the commission without a chance of redress."

The principles enunciated in the case just cited come fairly close to expressing our views as to what our duty is in this action, which, if held to be moot, would permit one under the protection of an injunction to violate a law and

thereafter successfully evade a review of the decision therein holding such law unconstitutional.

We have concluded that the questions in this action are of sufficient public importance to justify us in holding that this action is not moot. In the interest of law enforcement and for the purpose of making reasonably certain the duties of prosecuting officers with respect to the enforcement of this statute, we shall consider the question of its constitutionality.

In our opinion sec. 130.07 is constitutional. We need not determine at this time whether sec. 10.05 (15) of the ordinances of the city of Racine is invalid because it broadly prohibits a public auction of any stock between the hours of six o'clock p. m. and eight o'clock a. m.

At the outset we are confronted with the fact that this court, in *Hayes v. Appleton,* 24 Wis. 542, decided in 1869, held that the city of Appleton had no authority under its charter to pass an ordinance prohibiting a licensed auctioneer's selling any goods, wares, or merchandise after sundown. The relevant provision of the charter there considered authorized the common council "to regulate the time, place and manner of holding public auctions." The authority so granted was held to be limited by another provision of the charter which declared that the ordinances shall be for the government and good order of the city, for the suppression of vice, the prevention of crime, and for the benefit of the health, trade, and commerce thereof, and shall not be repugnant to the constitution and the laws of the United States or of this state. It was there held that the power of the common council extended only to the making of regulations that were for the good of the city. What particular evil was sought to be prevented or what good was sought to be promoted by the passage of the ordinance did not appear and no good reason for its passage was

apparently suggested in the brief of counsel for the city. The court refused to conjecture as to whether a sufficient reason existed therefor. The court said:

"But in this case and all other like cases the reasons for the restriction must be shown by proof. The court cannot take judicial notice of them. . . . It must appear that the purpose of the ordinance is a beneficial one within the meaning of the charter."

The court as then constituted was of the opinion that selling property at public auction was a lawful business; that the prohibition was general in its character and restrained the transaction of such business at particular hours during each day when it is customary to transact it, without any sufficient cause shown, and that therefore the ordinance was unreasonable and unlawfully interfered with the freedom of trade.

We need not conjecture as to whether that eminent court, if sitting today, would reach the same conclusion. Great changes have taken place since 1869. New evils have arisen to prevent which new laws are required. What was not considered against public policy in 1869 may obviously be considered so today in the light of the knowledge acquired and the experiences had during later years. We are not now dealing with an ordinance passed pursuant to a general power conferred upon a city, but with a law, advisedly and deliberately enacted by the legislature, ch. 264, Laws of 1931, and thereafter strengthened by amendment, ch. 135, Laws of 1933, which declares the public policy of this state with respect to the holding of jewelry auctions at night. We are not concerned with the precise abuses, evils, or practices the legislature sought to prevent. The legislature, subject to the constitutions of the United States and of this state, is supreme in its particular field, and it is well established that this court will not declare laws unconstitutional

unless it appears beyond reasonable doubt that they contravene constitutional provisions. *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 144 Wis. 386, 129 N. W. 623; *Lawrence University v. Outagamie County,* 150 Wis. 244, 136 N. W. 619; *Petition of Breidenbach,* 214 Wis. 54, 252 N. W. 366.

We do not need to conjecture today as to what the legislature probably had in mind when it enacted sec. 130.07. Numerous cases involving similar provisions reveal the probable reasons for the passage of such a law. The underlying reasons for such an enactment are fully discussed by the court of appeals of New York in *Biddles, Inc., v. Enright,* 239 N. Y. 354, 365, 146 N. E. 625. Summarizing its conclusions the court said:

"It is a reasonable effort to insure fair public sales, to prevent fraud and deception and to protect purchasers from the dangers lurking in the darkness of the night."

Other courts have seen in similar enactments efforts to prevent fraud and deception in the sale of jewelry. *Davidson v. Phelps,* 214 Ala. 236, 167 South. 86; *Mogul v. Gaither,* 142 Md. 380, 121 Atl. 32; *Roanoke v. Fisher,* 137 Va. 75, 119 S. E. 259; *State ex rel. Cook v. Bates,* 101 Minn. 301, 112 N. W. 67; *Buffalo v. Marion,* 13 Misc. 639, 34 N. Y. Supp. 945; *Clein v. Atlanta,* 159 Ga. 121, 124 S. E. 882; *Wagman v. Trenton,* 102 N. J. L. 492, 134 Atl. 115; *Ex parte West,* 75 Cal. App. 591, 243 Pac. 55; *Levy v. Stone,* 97 Fla. 458, 121 South. 565. Almost all of the cases cited were decided in very recent years and bespeak a growing and widespread sentiment against the holding of jewelry auctions after six o'clock at night in spite of the fact that artificial lighting has been so markedly developed. The supreme court of Michigan in *People v. Gibbs,* 186 Mich. 127, 152 N. W. 1053, concluded that a certain ordinance of the city of Detroit was unconstitu-

tional and void. However, it appears that the particular ordinance there considered contained stringent provisions for the protection of persons buying jewelry at public auction sales which permitted a buyer within five days from the date of sale to return the article purchased, if not of the quality represented, and to recover the price paid. Such provisions undoubtedly influenced the court in holding that the prohibition of night auctions was unreasonable.

We conclude that sec. 130.07 is a deliberate declaration of the present public policy of this state, is not an unreasonable interference with the freedom of trade, does not go beyond the legitimate field of reasonable regulation, and is a proper exercise of the police power.

It is also our conclusion that plaintiff's contention that the classification embodied in sec. 130.07 is unreasonable, arbitrary, discriminatory, and unjust and therefore offends against the Fourteenth amendment to the constitution of the United States, cannot be sustained. In nearly all of the cases just hereinbefore cited it was likewise earnestly contended that the laws or ordinances there considered so offended. However, in all of the cases mentioned, with the exception of the Michigan case, it was held that the classification made was reasonable and within the discretion of the legislative body.

No useful purpose would be served by reviewing the numerous cases found in our Reports relating to classifications adopted by the legislature in the exercise of its police powers. The law relating to such classifications is well established, not only by this court but by the supreme court of the United States. *Maercker v. Milwaukee,* 151 Wis. 324, 139 N. W. 199; *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N. W. 882; *Peterson v. Widule,* 157 Wis. 641, 147 N. W. 966; *Wisconsin Asso. of Master Bakers v. Weigle,* 167 Wis. 569, 168 N. W. 383; *State ex rel. Milwaukee S.*

*& I. Co. v. Railroad Comm.* 174 Wis. 458, 183 N. W. 687; *Chicago, B. & Q. R. Co. v. McGuire,* 219 U. S. 549, 31 Sup. Ct. 259; *Jeffrey Mfg. Co. v. Blagg,* 235 U. S. 571, 35 Sup. Ct. 167; *Patsone v. Pennsylvania,* 232 U. S. 138, 34 Sup. Ct. 281; *Baccus v. Louisiana,* 232 U. S. 334, 34 Sup. Ct. 439.

*By the Court.*—Order reversed, with directions to sustain the demurrer.