(19 Misc. Rep. 464.)

PEOPLE ex rel. BOWERS v. ALLEN, Supervisor.

(Supreme Court, Special Term, Cattaraugus County. February, 1897.)

1. SCHOOLS AND SCHOOL DISTRICTS—SCHOOL FUNDS—PAYMENT RESTRAINED.
    The superintendent of public instruction may, under his power to with-
hold from a district its share of the public-school money of the state for
willfully disobeying his decision (Laws 1894, c. 556, § 13, tit. 1), restrain the
payment of money in the custody of the supervisor to the trustee of a dis-
trict which refuses to comply with his decision that it should carry out its
contract with a teacher.

2. SAME—APPEAL OF TEACHER FROM DISMISSAL—MANDAMUS.
    Mandamus will not lie to compel a supervisor to pay to a school district
its share of the public-school money where he has been restrained from pay-
ing it by the superintendent of public instruction, who had entertained an
appeal by a teacher from the action of the trustee of the district in re-
fusing to permit her to fulfill her contract with it (Laws 1894, c. 556, tit.
14, §. 1, subd. 4), and had rendered a decision against the district, re-
quiring it to comply with its contract, which the district willfully disobeyed.

Application by Michael Bowers, as trustee, for a writ of man-
damus to compel Dan B. Allen, supervisor, to pay to the school
district represented by the relator its share of the public-school
moneys of the state. Denied.

N. M. Allen, for relator.
Dan B. Allen, in person.

SPRING, J. The history of the litigation which is the basis of
the alternative writ of mandamus in this case is remarkable for
the willful persistence with which the school district in question
has defied the superintendent of public instruction, and sought to
render nugatory several decisions of that department. Edna Cey-
ner was employed by the trustee of school district No. 6, in the
towns of Otto and East Otto, as a teacher in that district; and she
commenced school, in pursuance of that contract, in the fall of
1893, and continued teaching for two terms. Miss Ceyner was pre-
vented from retaining her position for the spring term of 1894 by
the trustee, who insisted the contract of hiring was terminable at
his election, and he was dissatisfied with her conduct of the school.
From his action in refusing to permit her to fulfill her contract an
appeal was taken by her to the superintendent of public instruc-
tion, and a trial had before that officer. Two questions seem to
have been litigated before the superintendent: (1) The terms of
the contract; (2) whether the trustee was justified in discharging
the teacher, if the agreement permitted this, providing her work
was unsatisfactory. After a very exhaustive examination by the
superintendent, a decision was rendered favorable to Miss Ceyner
on both the vital propositions in the case; determining, in effect,
the contract was for the full school year, and the refusal of the
trustee to permit her to complete her contract was unwarranted
and without excuse, and further directing the trustee of the school
district to pay Miss Ceyner upon the termination of the school
year at the rate of $7 per week for the spring term, that being the
agreed price for that term. The trustee declined to comply with

this order, and in proceedings therefor was removed from office. His successor was chosen, and, upon refusal to obey, was also removed by the superintendent, and a trustee of the district appointed by the school commissioner was again removed for a like cause. The present superintendent required a special meeting of the taxpayers of the school district to be called, directing them to vote to pay this teacher; but, instead of accepting this requirement, the vote was adverse to payment. The school moneys for the district were paid into the hands of the defendant supervisor, and the superintendent has, by an order bearing date March 6, 1896, enjoined and restrained the supervisor from paying over any of the moneys so held by him to the trustee of the district, or upon his order. Upon the application of the trustee an alternative writ of mandamus has been granted out of this court, requiring the supervisor to show cause why he should not pay whatever orders the said trustee may lawfully draw upon the school funds apportioned to said district, and the supervisor has made due return to the writ, but there is no disputed question of fact in the case.

Title 14 of the consolidated school law (chapter 556 of the Laws of 1894, and which was amended in 1896) provides the instances in which appeals can be taken to the superintendent of public instruction, and his powers thereunder, and their range includes substantially all the matters within the compass of the common schools. Section 1, subd. 4, of this title permits an appeal by "any person conceiving himself aggrieved in consequence of any decision made by the trustee of any district in paying or refusing to pay any teacher," and in subdivision 7, "by any other official act or decision concerning any other matter under this act, or any other act pertaining to common schools," and the decision rendered by the superintendent is final and conclusive, "and not subject to question or review in any place or court whatever." People v. Eckler, 19 Hun, 609. And in subdivision 4 of section 2 of this title the superintendent, in reference to such appeals, has the power "to make all orders, by directing the levying of taxes or otherwise, which may, in his judgment, be proper or necessary to give effect to his decision." The evident and commendable purpose of these appeals is to provide an expeditious and inexpensive determination of all matters relative to the common schools, with the further aim to keep them within the compass of the department of public instruction, as best fitted to mete out justice between the parties. The appeal was therefore properly taken by Miss Ceyner to the superintendent, and that was recognized by the trustee of the school district, as he caused numerous affidavits to be submitted on the appeal tending to controvert those made by and on behalf of the appellant. So the matter of the validity of the agreement and the sufficiency of the excuse in discharging Miss Ceyner were within the compass of the authority of the superintendent, and his decision was final and conclusive as to all matters actually or incidentally within the appeal taken. For the purpose of making effectual his decisions, he is vested with power almost unlimited and autocratic pertaining to school matters. This is an indispensable

requirement for a branch of the state government whose decisions are conclusive, and to which is intrusted the full management of the affairs affecting common schools. But his powers to enforce his mandates are not confined to the general provision I have quoted. By section 13 of title 1 the superintendent not only is vested with authority to remove any school commissioner "or other school officer" for "willful violation or neglect of duty" or willful disobedience of any of his decisions or orders, but he may also "withhold any share of the public money of the state from any district for willfully disobeying any decision, order or regulation as aforesaid, or when authorized by any provision of this act." I assume the superintendent, primarily, is to determine what constitutes a willful disobedience of his decisions, and his determination in that regard could not be disturbed unless, in any event, there was a gross abuse of his authority. But in this case it is very patent he was amply justified in determining there was a reckless, defiant, and willful endeavor to disregard and nullify his decision. Trustee after trustee openly and peremptorily refused to recognize, much less obey, the decision rendered after the district had submitted its matters to the superintendent to be passed upon by him, and to supplement this flagrant attempt to set at naught his decision the taxpayers of the district ratified the violations of their trustee. Either the superintendent must surrender, and concede that his decisions were perfunctory utterances without any enforceable significance, or he must make them effective by executing them. He did this by removing the trustees, as I have stated, but that method of procedure failed to insure obedience to the mandates of the superintendent; and he then pricked to the quick the recalcitrant taxpayers, by restraining the supervisor from paying over to the district its allotted portion of the public money.

The counsel for the relator urges that the superintendent had no power to enjoin the payment of this money, contending it had passed beyond his authority when it reached the custody of the supervisor. Article 2 of title 2 of the act referred to provides for the apportionment of the public money by the superintendent, and the manner of payment to the county and city treasurers. None of the money is in the hands of the superintendent, but the state treasurer is its custodian, and the apportionment is all made in the department of public instruction. The money belongs to the state, and the right of any district to its aliquot share is determined by the superintendent. Article 2 of the same title defines, among other things, the duties of the school commissioners as to these moneys and provides for the giving of a bond by the supervisor to the county treasurer conditioned for the honest disbursement of this money, and the supervisor must keep a correct account of the receipts and disbursements made by him. The whole tenor of the act mentioned is that the payment of money to the school district is under the direction of the superintendent, and at every stage in the proceedings culminating in the payment on the orders of the trustee the fund is that of the state, and can be restrained by him at any time. He is the functionary to determine

as to the making or withholding of payment, and he can do this whether the money is in the custody of the treasurer, and while the apportionment is being made, or when with the county treasurer or with the supervisor. His department is that of public instruction, and his authority is supremely potential in the government and control of the common schools of the state, and of the funds allotted to them by the state.

The counsel for the relator insists, with much elaboration, that the superintendent exceeded his power in directing the payment of this money to Miss Ceyner; that she might have taught elsewhere, and, if so, whatever she received should be applied in reduction of her stipulated compensation. There is some force in the criticism, as an abstract proposition, although in this case its significance is not very apparent. In the papers on which the alternative writ was granted there is no hint or suggestion that Miss Ceyner earned a penny elsewhere, or that the district has a meritorious defense, either in reduction or extinguishment of her claim, except the one finally and conclusively decided by the superintendent. The pith of the controversy before the superintendent was the terms of the agreement, and, that decided in her favor, the effect of it was to award the payment of $7 per week to her for each week of the spring term. If the defense suggested in the brief and argument of counsel exists in fact, the superintendent has ample power to modify his decision, and reduce the teacher's claim by any money received by her. The relator and his predecessors in office have not elected to make application to the department of public instruction for this purpose, but have spent their energies in a foolhardy attempt to evade the decision of the superintendent, and, if successful in their defiance, to belittle and ridicule that department. In any event, their course is a sufficient reason for his order withholding the payment of this money now in the hands of defendant.

I have preferred to dispose of this application on the merits, but it occurs to me there are insuperable legal objections of more technical import to granting the relief sought by the relator. The supervisor is in possession of the school moneys as a subordinate of the department of public instruction. The superintendent of that department has enjoined the supervisor from paying over this money to the trustee, or upon his orders. The statute to which I have referred clearly vests the superintendent with plenary power to withhold the payment of moneys from the school district. If the defendant should be ordered by this court to pay over these moneys, obedience to that order will be in violation of the formal and explicit mandate of his superior, to whom is committed the management of the schools and the moneys allotted to them. The courts will not place any officer in that anomalous and contradictory position. People v. Board of Sup'rs, 30 Hun, 146; People v. Hayt, 66 N. Y. 606. If the relator desires to test his right to this money, there are several remedies available to him, without resulting in the complications that would follow the granting of the writ now asked for. The relator can assert his remedy by mandamus

against the superintendent, thus going to the fountain head; he can sue the supervisor; he can appeal to the superintendent from the declination of the supervisor to pay over this money; he can apply for a modification of the original decision, or the holder of an order from the trustee can sue the supervisor,—Barrett v. Sayer (Sup.) 12 N. Y. Supp. 170; Tillinghast v. Merrill, 151 N. Y. 135, 45 N. E. 375,—thus showing an adequate remedy at law. And these remedies do not involve a collateral attack on the order of the superintendent.

In lieu of separately stating the facts in the above-entitled action, I subjoin a concise statement of the grounds upon which the issues have been decided: That the supervisor is now enjoined by an order of the superintendent of public instruction from paying over to the trustee of the school district, or upon his orders, the money the payment of which is asked for by the petition herein; the said superintendent had adequate cause for the issuance of such restraining order, and his right to grant the same cannot be attacked or questioned in this proceeding; that the defendant is entitled to a final order or judgment denying the application of the relator for a peremptory writ of mandamus, and dismissing the proceedings, with costs; and a final order or judgment will be entered accordingly.

Ordered accordingly.