PETERSON, Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

*December 9, 1937—January 11, 1938.*

For the appellants there were briefs by *Walter J. Mattison*, city attorney, and *Omar T. McMahon* and *Mathias Schimenz,* assistant city attorneys, and oral argument by *Mr. McMahon* and *Mr. Schimenz.*

For the respondent there was a brief by *Shaw, Muskat & Paulsen,* attorneys, and *William F. Hannan* of counsel, all of Milwaukee, and oral argument by *Mr. Martin R. Paulsen* and *Mr. Hannan.*

NELSON, J.   In order that this controversy may be understood, a recitation at the very outset of certain statutes and certain resolutions of the board is deemed necessary.   In 1907, the legislature enacted ch. 459, "An Act relating to school boards and common and high schools in cities of the

first class." So much of section 9 thereof as can have any materiality provides:

"A committee, consisting of the president of the board and' four members of the board selected by the president, shall on a strict basis of eligibility and fitness, examine, certificate, employ, classify, *transfer and promote* teachers. The action of such committee shall be subject to amendment, rejection or confirmation by the board."

In 1920, the legislature, at a special session, enacted ch. 29. That chapter amended ch. 459, Laws of 1907, as theretofore amended, and enacted the following section:

"3. The said board of school directors shall annually determine and fix a schedule of salaries for all teachers in the common and graded schools of such city, subject to the jurisdiction of said board. Such schedule of salaries shall provide a minimum salary for all such teachers of not less than twelve hundred dollars for a period of teaching service not to exceed two hundred days in any one year, and a minimum-maximum salary for all such teachers of not less than twenty-four hundred dollars for a period of teaching service not to exceed two hundred days in any one year."

On October 5, 1920, in pursuance of the provisions of said ch. 29, the board adopted a resolution, which in part, and so far as it is presently material, provided:

"Resolved, that subsection (b) of section 1 of article XXXII [Rules of the board] be repealed and that the following be substituted in lieu thereof after January 1, 1921:

"(b) Principals in district schools shall be paid in accordance with the following schedule:

| Years: | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Group A—Less than 8 regular graded rooms | $2600 | 2700 | 2800 | 2900 |
| Group B—8 to 13 regular graded rooms, inc. | 3100 | 3200 | 3300 | 3400 |
| Group C—14 to 17 regular graded rooms, inc. | 3600 | 3700 | 3800 | 3900 |
| Group D—18 regular graded rooms and over | 4100 | 4200 | 4300 | 4400 |

. . .

"Principals appointed or promoted to Group C or D after January 1, 1921, must be college or university graduates who have had successful grammar school experience. Principals shall not proceed automatically from a lower to a higher classification."

The salary schedule thus adopted was published in the board's book of rules each year up to 1924. On June 30, 1924, by appropriate action, the board revised its rules. The revised rules provided that all rules and provisions inconsistent with the revision were repealed. Art. III, subsec. A, subsec. 9, of the revised rules, provided:

"The salaries of teachers and principals shall be in accordance with the salary schedule adopted by the board."

In the years subsequent to 1924, the salary schedule applicable to principals in district schools, hereinbefore recited, and the salary schedules applicable to other principals and teachers, were not published in the book of rules. The salary schedule, however, adopted in 1920, applicable to principals, remained unchanged except as amended during certain years when the board adopted resolutions providing for flat cuts or percentage reductions in all salaries. On December 2, 1924, the board duly adopted the following resolution:

"Resolved, that the salary schedule in effect for the schools in December, 1924, shall be continued during the year 1925."

Similar action was taken by the board on December 2, 1925.

The next action was on January 4, 1927, when the board adopted the following resolution:

"Resolved, that all salary schedules of the board as at present be and the same hereby are adopted as the salary schedule for the year 1927."

Identical resolutions, except as to the year, were adopted by the board on December 4, 1928, January 13, 1931, and December 1, 1931.

The next action was on August 31, 1932, when the board duly "resolved, that the salary schedule now in force, excepting for some inequities in the janitors schedule, be adopted for the ensuing year with these modifications : That all salary increments stopped by the board in June be reinstated as of that date. The salary of all employees, excepting that of the chief of buildings and grounds and employees under the minimum wage schedule, shall be cut ten per cent for one year beginning September 1, 1932."

The next action of the board was on August 22, 1933. At that time a resolution was adopted which provided "that the salary schedules now in force be adopted for the ensuing year," with certain modifications, one of said modifications being an eleven per cent cut for one year beginning September 1, 1933.

The next action was on August 7, 1934. At that time the board adopted a resolution which, in so far as it is material to this controversy, provided as follows :

"Resolved, that the salary schedules and all resolutions pertaining thereto now in force excepting as affected by the preceding resolution [not material], be adopted for the ensuing year with these modifications :

"The salaries of all employees [exceptions not material] shall be cut five per cent for one year beginning September 1, 1934."

On August 7, 1934, the board also adopted the following resolution offered by Director Ruenzel, which resolution is referred to as the "Ruenzel resolution :"

"Resolved, that the salary of all elementary-school principals, where they are not receiving the salaries according to the classifications of the schools to which they have been assigned, be increased to the minimum of the classification to which they are now assigned but in no case shall such salary at this time be increased more than five hundred dollars. Hereafter said principals shall receive the annual increment until they receive the salary of their classification."

On September 3, 1935, the board adopted the following resolution:

"Resolved, that the salary schedule now in force and all resolutions pertaining thereto be adopted for the year beginning September 1, 1935."

An identical resolution was adopted by the board on September 1, 1936.

Two other actions by the board, approving committee recommendations and adopting resolutions, are suggested as having some relevancy.

On November 4, 1924, the records of the board reveal the following action:

"The committee reported having considered the communication of the superintendent relative to salary increments, your committee recommends the adoption of the following resolution:

"Resolved, that all principals and teachers now in the board's employ and not now in the September increment class, shall receive their automatic salary increments on their appointment anniversary. All teachers and principals hereinafter appointed shall receive their automatic salary increments in September."

That resolution has never been altered, amended, or repealed.

On February 7, 1928, the board record contains the following:

"Your committee having given consideration to the recommendation of the superintendency that high school principals' schedule of salaries shall be classified, recommends the adoption of the following resolution for the purpose of establishing a junior and senior high school principals' salary schedule:

"Resolved, that any principal of proper qualifications at the maximum of his or her group or division whose school

meets the necessary conditions is eligible for nomination to the next group or division.

"1st Division—Group A, B, C and D of District School Schedule.

"2nd Division—Junior High Schools (and Senior High Schools up to 1,500 membership).

"First year, $4,520; 2nd—$4,640; 3rd—$4,760; 4th— $4,880; 5th—$5,000.

"3rd Division—Senior high schools above 1,500 membership. Principals who are nominated and elected to this division shall receive not to exceed three bonuses of $120 each above the second division maximum, for each 300 or major fraction thereof in excess of 1,500 average daily membership in September.

"Resolved, further, that the junior and senior high principals' salary schedule take effect as of September 1, 1927."

On December 3, 1935, the committee on appointments reported to the board as follows:

"Your committee has instructed the officers of the board that no initial appointments or subsequent appointments to higher groups or divisions can occur or in any way be recognized as having occurred unless the appointments committee in accordance with the Wisconsin law has made, or shall have made a recommendation in specific reference thereto."

That report was made about a month after the commencement of the present action.

This summary of the statutes and resolutions of the board which we consider applicable is substantially complete.

We may now proceed to a statement of the facts upon which the plaintiff bases his claims for additional salary. In September, 1925, the plaintiff entered the Milwaukee public school system as an elementary-grade-school teacher. Prior to that time he had received an M. A. degree from Columbia University in New York. He was duly assigned to the North Thirty-Seventh street school upon the nomination of the superintendent, action by the committee on appointments,

and board confirmation. On September 7, 1926, the plaintiff was duly made an acting principal in the Garden Homes school at a salary of $2,600. On February 7, 1928, he was duly appointed principal and was paid $2,700 per year effective February 7, 1928. On August 29, 1928, the plaintiff was assigned by the superintendent to the West Keefe avenue school, effective in September. At that time there were eleven graded rooms at that school. Under the salary schedule, that school was a Group B school (8 to 13 regular graded rooms), and the salary of a principal thereof was $3,100 for the first year. The plaintiff was paid a salary of $2,800. During the year 1929–1930, he was continued as principal of that school, which still contained eleven graded rooms. That year was plaintiff's second year as principal of that school. Under the salary schedule he was entitled to $3,200 but was paid only $2,900. Before the commencement of the year 1930–1931, a number of rooms had been added to that school, so that during that year there were fourteen graded rooms in that school. On September 2, 1930, the board took action which purported to promote the plaintiff from Group A-2 to Group B, although he was continued as principal of a Group C school. According to the salary schedule that school was, at the opening of that school, a Group C school. Under the salary schedule the plaintiff was entitled to a salary of $3,600. He was paid only $3,100. During the year 1931–1932, he was continued as the principal of that school, which during that year had seventeen graded rooms. Under the salary schedule that school remained a Group C school. The year 1931–1932 was in fact plaintiff's second year as principal of a Group C school. The salary provided by the schedule was $3,700. The plaintiff, however, was paid only $3,200. During the year 1932–1933, the plaintiff was continued as the principal of that school. It contained seventeen rooms during that year, which was plaintiff's third year as the principal of a Group C school.

The salary schedule provided a salary of $3,800. The plaintiff, however was paid for that year $2,970, which was a $3,300 salary, less ten per cent. During the year 1933–1934, the plaintiff was continued as the principal of that school. A dispute arose as to the number of graded rooms in that school during that year, the defendants asserting that there were only seventeen rooms and the plaintiff asserting that there were eighteen rooms. That dispute was resolved in favor of the plaintiff by the trial court. For the principal of a Group D school, the salary schedule provided a salary of $4,100 for the first year of such principalship. The plaintiff, however, was paid $3,026, which was a $3,400 salary, less eleven per cent. During the year 1934–1935, the plaintiff was continued as principal of said school, but the number of rooms during that year was only seventeen, which under the salary schedule is a Group C school. That year was the fourth year during which the plaintiff was the principal of a Group C school. The salary for the fourth year in a Group C school was $3,900. The plaintiff received a salary of $3,420, which was $3,600, less five per cent. During the year 1935–1936, the plaintiff continued as principal of that school, which contained seventeen rooms. That school, under the salary schedule, was a Group C school. The salary, according to the schedule, was $3,900. The plaintiff was paid the sum of $3,700. The plaintiff contends that he is entitled to a judgment for the difference between the salaries actually paid him and the salaries to which he was entitled under the salary schedule as modified by the action of the board in reducing the salaries by flat cuts during the years 1932–1933, 1933–1934, and 1934–1935.

As hereinbefore stated, the trial court denied the plaintiff any recovery for additional salary before the year 1934–1935, because it was of the opinion that under the salary schedule there could be no automatic promotion from one group to another, and because the plaintiff had been paid a

salary in accordance with such promotions as were authorized by the board. The court, however, held that the Ruenzel resolution amounted to a promotion of the plaintiff by board action, and therefore the plaintiff was entitled to additional salary subsequent to its adoption.

Numerous errors are assigned by the defendants which we deem it unnecessary to recite. Under his motion for review the plaintiff contends that the court erred in denying him any recovery for any of the years prior to 1934. The several contentions of the parties give rise to the following questions: (1) Whether ch. 29, Laws of Sp. Sess. 1920, required the board to adopt a salary schedule which included grade-school principals; (2) whether, adding to the number of rooms in the Keefe avenue school advanced said school to a higher group and automatically required the payment to the plaintiff of a salary in accordance with the salary schedule; (3) whether the Ruenzel resolution adopted on August 7, 1934, amended the salary schedule or was a move or attempt to adjust the salaries of such principals as were not in fact receiving the salaries to which they were entitled under the salary schedule; (4) whether the court erred in finding that during the year 1933–1934 there were eighteen rooms in the Keefe avenue school; and (5) whether the court erred in declaring that the status of the plaintiff was that of a principal of a Group D school.

As to the first question, we are of the opinion that the language of sec. 3, ch. 29, Laws of Sp. Sess. 1920, to wit:

"The said board of school directors shall annually determine and fix a schedule of salaries for all teachers in the common or graded schools of such city, subject to the jurisdiction of said board,"

is sufficiently broad to include the principals of such schools, · and that the legislature so intended. The purpose of such law was not to confer on the board power to adopt a schedule

of salaries, but to make the adoption of such a schedule mandatory. Under the broad powers conferred upon the board by ch. 459, Laws of 1907, as amended, the board had the power and authority to adopt a schedule of salaries before said ch. 29 was enacted. Apparently in pursuance of the requirements of ch. 29, the board, in October, 1920, adopted a salary schedule for teachers and principals, which salary schedule has continued in force and effect during all of the years since its adoption, with the exception of three years when the board, in adopting its annual salary schedule, provided for flat reductions in all salaries. So, whether the term "all teachers," is broad enough to include "principals" of the graded schools is of little importance, since the board did adopt a salary schedule applicable to all principals in the common or graded schools.

As to the second question, we are of the opinion that, when the board added to the Keefe avenue school a sufficient number of rooms to change its classification from a Group B school to a Group C or D school, permanently continued the plaintiff as the principal thereof, and supplied to that school teachers for the rooms added to such school, the classification of that school under the salary schedule was thereby changed, and the plaintiff, without other formal action by the board, became entitled to the salary provided by the effective salary schedule. Defendants earnestly contend that, when rooms were added to the building and new teachers authorized to teach therein, the classification of the plaintiff as a grade-school principal was not thereby changed, and that he was not by such actions of the board promoted so as to be entitled to a higher salary. While in a certain sense the salary schedule classifies principals, it in fact classifies graded schools for salary purposes. In our view the schools, rather than the principals thereof, are classified. The salaries of principals are based upon the number of rooms in the schools

of which they are principals. It is conceded that, when a teacher is promoted to a principalship of a school in a certain group, and continued to teach therein, the annual increments are automatic and require no board action. When a principal has taught four years in a school, the classification of which has not been changed by adding rooms thereto, such principal is not at the beginning of his fifth year automatically advanced to a higher group. Such transfer or promotion can be effected only by action of the school board. In transferring a principal from one school classified as a Group A school to a larger school classified as a Group B, C, or D school, a promotion, properly speaking, would be effected, and that can be done only by board action. When, however, a school having a certain classification is by appropriate board action enlarged by adding rooms thereto sufficient in number to give it a higher classification, and the principal thereof is permitted, not temporarily but permanently, to continue in that position, it would be unsound to hold that he is not entitled to the salary provided by the salary schedule, or to hold that he must await formal action by the board recognizing or affirming what the board itself has brought about by appropriate action. To hold otherwise would obviously render a salary schedule a pretense and a sham. A salary schedule so administered would fall far short of the beneficent purposes which such schedules are supposed to promote. In a research bulletin issued by the National Education Association (vol. V, No. 3, May, 1927), on the "Scheduling of Teachers' Salaries," it is said:

"By a salary schedule is meant a plan for the payment of school employees formally adopted by the board of education or school committee, which to a large degree automatically determines the beginning salary, the amount and number of yearly increases, and the maximum salary received by various groups of teachers, principals and other employees with specific qualifications.

"It is coming to be generally recognized both in theory and in practice that the adoption of a salary schedule by a school system is a step in the direction of increased school efficiency. Practically all large cities and approximately seventy per cent of all cities over 2,500 in population have adopted salary schedules. A salary schedule as a basis for teacher compensation has many advantages.

"Certain evils may arise from the adoption of salary schedules particularly if they are made too automatic. Salary schedules which place every employee of a school board under a machine-like scheme of compensation from which there can be no deviation in dealing with exceptional individuals or in meeting special situations which arise are to be avoided. The welfare of the schools demand that all salary schedules have a reasonable degree of flexibility.

"A salary schedule should be the reflection of the school board's policy with reference to the economic compensation of those responsible for the schooling of the children of the community. Its provisions should be an outgrowth of a careful balancing of matured experience, the indications of the best available statistical data, and an intelligent attitude toward the welfare of the community as it is bound up in the lives of its children."

The salary schedule involved here would seem not to be subject to the criticism that it is too automatic or not sufficiently flexible. Under the provisions of ch. 29, Laws of Sp. Sess. 1920, the board is commanded to "annually determine and fix a schedule of salaries for all teachers in the common or graded schools of such city." So, there can be no lack of power in the board to change from time to time the schedule of salaries, just as it did during the years when the salary schedule was amended by flat reductions.

As to the third question, it is our conclusion that giving to the language of the Ruenzel resolution the sense that the common usage of its language requires, it was not intended as an amendment of the salary schedule, but was an attempt to readjust the salaries of all elementary-school principals

who were not in fact receiving salaries according to the classification of the schools to which they had been assigned. The resolution obviously applies only to those principals who were not receiving salaries according to the classification of the schools to which they had been assigned, and is a clear recognition by the board that certain principals were not receiving such salaries. On the very day that the Ruenzel resolution was adopted, the board had adopted a resolution which provided that the salary schedules and all resolutions pertaining thereto now in force, excepting as affected by the preceding resolution, be adopted for the ensuing year but with certain modifications, one of which was a five per cent cut.

As to the fourth question, we are of the opinion that the court's finding that in June, 1934, there were eighteen rooms in the Keefe avenue school, cannot be disturbed. It is true that in reporting the number of rooms for that year the plaintiff listed only seventeen rooms. This computation, he claims, was an error on his part in counting the kindergarten department a single room, although two rooms in the building were occupied by kindergarten teachers,— the rooms being in separate parts of the building and used by kindergarten teachers in conducting morning and afternoon classes in both rooms. We cannot hold that the finding of the court is against the great weight or clear preponderance of the evidence.

As to the fifth question, it is our conclusion that, while it was proper for the court to determine the status of the plaintiff under the effective salary schedule for any one year, such status so found to exist during any one year is not a status that is permanent or one which cannot thereafter be changed by proper board action.

To summarize our conclusions: (1) The salary schedule adopted in 1920 clearly included grade principals. (2) A grade principal, duly appointed to a permanent, not temporary, position is entitled to a salary in accordance with the salary schedule as adopted by the board; that is to say, a

salary based upon the number of graded rooms in the school of which he is principal. (3) A principal, if continued in a certain school, is, without board action, automatically entitled to the yearly increment in salary up to four years. (4) A principal of a school in a certain group does not, at the conclusion of his fourth year, automatically proceed to a higher salary classification. (5) A principal *temporarily* transferred to a higher-group school is not thereby entitled to a higher salary. (6) A principal, duly assigned to a school to which the board adds additional rooms so as to give it a higher classification, is, if the board continues him in such employment, entitled to a salary based upon the number of rooms in accordance with the salary schedule. This cannot be called an automatic promotion, but is one which results from the deliberate action of the board in adding additional rooms to the school and supplying additional teachers, thereby rendering the duties of the principal thereof more onerous and burdensome. (7) The resolution passed by the board on September 2, 1930, which purported to promote the plaintiff to a Group B school, when in truth and in fact the school of which he was the recognized permanent principal had become by virtue of the board's action in adding rooms thereto a Group C school, was so contrary to the purpose, spirit, and intent of the salary schedule as to be without legal significance. (8) The Ruenzel resolution was intended to adjust the salaries of certain principals who were not being paid according to the salary schedule. It was not intended to change or alter the salary schedule. Its adoption did not affect the *right* of the plaintiff to recover the amounts of additional salary to which, under the salary schedule, he was entitled. (9) A reduction of the number of graded rooms in a given school may, if sufficient in number, lower the classification of such school and automatically affect the salary of the principal thereof. (10) The three flat reductions in salary applicable to substantially all of the employees of the board was a modification of the salary schedule and

an effective reduction of all salaries. (11) While the status of a principal during a given year may be determined under an existing salary schedule, such status so determined is not a permanent one unless the determinative conditions continue to exist and the salary schedule continues unchanged.

*By the Court.*—The judgment is reversed, and cause remanded with directions to the trial court to compute the amounts of additional salary to which the plaintiff is entitled in accordance with the opinion and which are not barred by the six-year statute of limitations, and to render judgment in favor of the plaintiff and against the defendants for the amounts so found to be due.