154 P.2d 252

**ORTEGA et al. v. OTERO.**

**No. 4844.**

Supreme Court of New Mexico.

Dec. 20, 1944.

Charles B. Barker, of Santa Fe, and H. O. Waggoner, of Albuquerque, Madeline

Kinter Remmlein, of Washington, D. C., amicus curiae, for appellant.

No brief filed for appellee.

BICKLEY, Justice.

The appellant (defendant), who is a person certified as qualified to teach in the schools of the state, was, in writing, duly employed as Rural School Supervisor for Valencia County. After serving a few months charges were preferred against him and after a hearing he was discharged by the board, from which decision he appealed to the State Board of Education, which decided that the charges were not sustained and that he was qualified to hold the position and that the written contract theretofore entered into between the County Board and the appellant was and continued to be in full force and effect.

Before the decision of the State Board was rendered the plaintiffs (appellees) commenced an action in the District Court against the appellant to enjoin him from interfering with the property under their control and from holding himself out as Rural School Supervisor and from interfering with the management of the schools, school teachers, and the plaintiffs.

The defendant answered, denying the charges; denying that any proof of defendant's guilt had been produced against him in the hearing before the County Board; setting forth the claim that he was entitled to an appeal to the State Board of Education, and that the State Board had reversed the decision of the County Board and otherwise putting at issue the allegations of the complaint and prayed that the complaint be dismissed.

The District Court made certain findings and conclusions and thereupon rendered judgment granting to plaintiffs the relief they prayed for, and enjoined defendant accordingly.

The hearing in the District Court took such a turn that the sole question involved is: Does the State Board of Education have the power to entertain an appeal from the decision of a County Board of Education in case of a discharge of a Rural School Supervisor, and thereby perhaps set at naught the decision of the County Board?

The trial court erroneously answered this question in the negative.

The following finding and conclusion of the trial court incorporated in the judgment discloses the theory of the decision: "That the sole question involved in this action is strictly one of law and that Rural School Supervisors appointed pursuant to Section 55-807 of the Laws of New Mexico, Annotated, 1941, are not teachers and can be discharged by the Boards of Education of the counties in which said respective Rural School Supervisors are so appointed, and in a case where a Rural School Supervisor is so discharged by a County Board of Education, no appeal lies to the State Board of Education and the decision of the County Board of Education is final and cannot be reviewed by the said State Board, and that the answer of the Defendant, in this cause,

although taken as admitted, does not constitute a defense to the complaint filed by the Plaintiffs and that the Defendant, Jose. Luis Otero, was discharged by the Valencia County Board of Education as Rural School Supervisor of Valencia County, New Mexico and his appeal and the decision of the State Board of Education are not authorized by law   *   *   *".

The question is: Did the court give too narrow a signification to the word "teachers"? The immediately controlling statute is as follows: "Discharge of contract teachers—Hearing—Written charges—Notice—Right of appeal to state board—Hearing de novo—Decision final—Salary pending appeal.—No teacher having a written contract shall be discharged except upon good cause and after hearing on written charges, which, together with written notice of the time and place of hearing, shall be served upon said teacher at least five (5) days prior to such hearing. Such teacher shall have the right to appeal within ten (10) days to the state board of education, which board shall hear the matter de novo at a time and place to be by it fixed and the decision of such state board of education shall be final. Pending its decision upon appeal, such teacher shall be entitled to receive the salary contracted for. (Laws 1923, ch. 148, § 1105, p. 290; 1925, ch. 73, § 20, p. 99; C.S. 1929, § 120-1105; Laws 1941, ch. 202, § 3, p. 399.)" 1941 Comp. § 55-1113.

Appellant earnestly argues that since by the provisions of 1941 Comp. § 55-807, County Boards of Education may employ as Rural School Supervisors only such persons as are "certified as qualified to teach in the schools of the state", it follows that the provisions of Chapter 202, L. 1941, 1941 Comp. 55-1111, 55-1112, 55-1113, being "An Act Relating to the Employment and Discharge of and Contracts with Teachers in the Public Schools of New Mexico and Amending Section 20 of Chapter 73, Laws of 1925, and Declaring an Emergency," applies to Rural School Supervisors with respect to the right of appeal to the State Board of Education from a decision of a governing board discharging such Rural School Supervisors.

Counsel for the National Education Association of the United States, a nonprofit organization of teachers, chartered under the laws of the District of Columbia in 1896 and by Act of Congress in 1906, has filed a brief amicus curiae, aligned with appellant.

We have not been favored with a brief on behalf of appellees.

Amicus curiae states:

"Many states have a statutory definition of 'teacher': e.g., Section 1722(c) of the West Virginia Code of 1943 provides that 'Teacher shall mean teacher, supervisor, principal, superintendent, public school librarian, or any other person regularly employed for instructional purposes in a public school of this State.'

"Where there is no such statutory definition of 'teacher' many courts have construed the term to mean all employees cer-

tificated as teachers. For example, the Supreme Judicial Court of Massachusetts declared that 'a principal is merely a teacher who is entrusted with special duties of direction and management.' McDevitt v. School Committee of City of Malden, 1937, 298 Mass. 213, 10 N.E.2d 100; Downey v. School Committee of Lowell, 1940, 305 Mass. 329, 25 N.E.2d 738. The Ohio Supreme Court said that the term 'teacher' in the teacher tenure act is not to be narrowly construed and may be so interpreted as to cover an assistant county superintendent. State ex rel. Frank v. Meigs County Board of Education et al., 1942, 140 Ohio State 381, 44 N.E.2d 455."

New Mexico has no case law interpreting the scope of the designation "teacher" and no express statutory definition thereof.

We are thus confronted with an issue of first impression, and must from the materials at hand distill the will of the Legislature.

The power relative to appointment or employment of rural school supervisors was introduced by amendment of Section 120-804, N.M.Stats. Ann.Comp. 1929, by introducing the following language appearing in Section 5 of Chapter 119, L. 1931: "Said Board may employ a rural school supervisor at the expense of the county, which supervisor must be approved by the State Board of Education and must have such educational qualifications as may be determined by said Board of Education, such supervisors to be permitted only in counties whose rural teachers number fifty or more."

This section was amended by Chapter 114, L. 1937, but in no material particular so far as it related to employment of rural school supervisors, the only change being the addition of the word "State" before the phrase, "Board of Education" in the second place that said phrase, "Board of Education" appears in the sentence, and omitting the phrase "such supervisors to be permitted only in counties whose rural teachers number fifty or more." The section was again amended by Chapter 173, L. 1939, so as to read: "Said board may employ a rural school supervisor at the expense of the county, which supervisor shall be nominated by the county superintendent of schools and must be approved by the state board of education. Such supervisors must have a minimum of one (1) year actual teaching or supervisory experience in the elementary schools of New Mexico and must have high school graduation and at least a Bachelor of Arts degree or its equivalent from a fully accredited college or university, and at least fifteen (15) hours training in class room supervision. * * *" 1941 Comp. 55-807.

Thus appears an inclination toward giving the status of "teacher" to the position of rural school supervisor. Why the requirements for certification as a teacher and other educational requirements including "at least fifteen (15) hours training in class room supervision" unless the supervisor is to teach through advice and counsel to teachers, and supervision of class room work? Such in practice is the function of rural school supervisors including class

room instruction to the pupils when occasion requires.

The understanding of the parties as reflected in the written contract affords some enlightenment. It is therein said that the supervisor must supervise the schools assigned, be prompt, thorough and conscientious, "judicious in punishment and watchful to the morals of the pupils." This fairly implies a required direct contact with and instruction of such pupils.

The record further throws some light on the nature of the work of a supervisor. From a portion of the minutes of the State Board of Education, we quote the following: "Testimony of Mrs. Mary Watson, Director of Elementary Education, was to the effect that she had examined the work of Mr. Otero in Valencia County and found that he had made a careful selection and placement of instructional material, that the interest and content of such material was acceptable, that the daily program worked out by Mr. Otero was satisfactory, that he had given diagnostic tests in 1942-43 and had selected material that would be used in 1943-44 to remedy weaknesses revealed by these tests."

A conventional definition of "teacher" is: "One whose occupation is to instruct." Webster. It requires no undue liberality of construction in view of the above mentioned required educational equipment and practice to say that a practicing rural school supervisor is a teacher.

We now turn to a consideration of Chapter 202, Laws 1941, 1941 Comp. §§ 55-1111, 55-1112, 55-1113, to discover if we may whether with its history there is therein contained any definitive material touching on the meaning of the word "teacher".

It is recalled that prior to this enactment we had Section 20 of Chapter 73 of the 1925 Session Laws of New Mexico, appearing as Section 120-1105 in the 1929 Compilation, which read as follows: "No board of education, county school superintendent or board of school directors, or any member of such boards, shall discharge a teacher without granting to such teacher full hearing and the right of appeal to the state board of education."

This was amended by Section 3 of Chapter 202, L. 1941, 1941 Comp. 55-1113, to read as follows:

"Section 3. Section 20 of Chapter 73 of the 1925 Session Laws of New Mexico, appearing as Section 120-1105 in the 1929 Compilation of the New Mexico Statutes Annotated, be and the same is hereby amended to read as follows:

"Section 120-1105. No teacher having a written contract shall be discharged except upon good cause and after hearing on written charges, which, together with written notice of the time and place of hearing, shall be served upon said teacher at least five (5) days prior to such hearing. Such teacher shall have the right to appeal within ten (10) days to the State Board of Education, which Board shall hear the matter de novo at a time and place to be by it fixed and the decision of such State Board of Education shall be final. Pending its

decision upon appeal, such teacher shall be entitled to receive the salary contracted for."

The effect of the amendment is to further protect the employment status of teachers.

Of greater significance, however, is the time and circumstance of the amendment.

The Legislature of 1941 doubtless sensed the need to get in step with the march of progress toward a greater security to those who have become equipped through education and training to assume positions in our school system.

What is known as Teachers' Tenure Acts have been adopted in most of the states of our union, the objects of which are to encourage men and women to make a lifetime profession of teaching and to stimulate them to seek positions in the school system requiring the qualifications of teachers, and to protect them in their employment from the whims of those possibly politically minded, and to insure their continuance in such employment.

So the 1941 Legislature adopted its Chapter 202. Section 1 formulates a presumption of renewal of employment of teachers and other employes certified as qualified to teach in the schools of the state in the absence of written notice of the governing board of its desire to continue or discontinue the services of such teacher or employe.

Whether the phrase "or other employe certified as qualified to teach" means an employe whose employment status necessarily depends upon his being certified as qualified to teach we find it unnecessary to decide, because in the case of rural school supervisors such is the case.

Why did the Legislature of 1941 in this Chapter 202 choose to amend Section 20 of Chapter 73, L. 1925, unless it was intended as a part of the common purpose of securing continuity of service of persons employed in the schools and mentioned in Section 1?

It is well in pursuing our inquiry to consider the title of Chapter 202, L. 1941. It is: "An Act Relating to the Employment and Discharge of and Contracts with Teachers in the Public Schools of New Mexico and Amending Section 20 of Chapter 73, Laws of 1925, and Declaring an Emergency."

In terms it relates solely to "teachers" and yet in Section 1 of the Act we find a plain intent to accord teachers and "other employes certified as qualified to teach", the same protection.

Since we may, in an inquiry as to the legislative intent, examine the body of an Act, go to its title, and back again to the Act itself, we think it is manifest that the Legislature (perhaps influenced by statutory definitions which the members may have seen employed in connection with Teachers' Tenure Acts, heretofore quoted as embracing a numerous class of employes engaged in school work), deemed the word teachers in the title to be comprehensive enough to cover those who are certified as

qualified to teach and who are employed in school work.

If that was the legislative view when drafting Section 1, and we think it was, then it is not difficult to comprehend why in drafting Section 3 they thought it unnecessary to repeat after the opening words "No teacher" the words used in Section 1, "or other employe certified as qualified to teach."

Furthermore, we have the construction of the State Board of Education which is in accord with the view we have just expressed. The State Board assumed jurisdiction and entertained the appeal which manifests their construction of the meaning of the statute.

It is true that this circumstance does not meet the requirements of the rule of construction that the interpretation of a statute by a department of public officials charged with the duty of administering a statute will be of persuasive force with the courts, because of its lack of antiquity. But there is something else in the statute so far as this particular department is concerned which is just as potent. We quote from the brief of amicus curiae:

"The District Court of Valencia County found 'That the State Board of Education has no jurisdiction in the matter and attempted to act wholly without authority of law.' (R. 35) Section 55-1113 provides that a teacher having a written contract shall have the right to appeal to the State Board of Education 'which Board shall hear the matter de novo at a time and place to be by

it fixed and the decision of such State Board of Education shall be final.' Since Defendant is a certificated teacher entitled to be included under and protected by this provision, the jurisdiction of the State Board of Education can hardly be denied. However, the National Education Association respectfully draws the attention of the Honorable Court to another section of the New Mexico Statutes Annotated 1941 in addition to Section 55-1113 noted above; to wit: Section 55-101.

"Section 55-101 of New Mexico Statutes Annotated 1941 dealing with the authority and duties of the State Board of Education reads: 'The state board of education shall explain the true intent and meaning of the law, and shall decide without expense to the parties concerned, all controversies and disputes that arise under it, and their decision shall be final.' This provision is almost universal in the states, quasi-judicial powers having been extended to state school administrative bodies early in the history of public education in the United States.

"The New York State Superintendent's annual report for the year 1822 contained the following statement: 'The school act is already too complicated in many of its provisions to increase the difficulty by driving the parties into an expensive litigation to settle a point of no great importance in itself but which derives all its interest from the passions and prejudices of the parties concerned. It were better in such cases to have a speedy decision, at the

risk of being wrong, than to injure, if not derange, the whole system by a long, oppressive, and procrastinated legal controversy.' New York State Annual Report, Superintendent of Common Schools Assembly Journal 1822 at 621. The New York General Assembly, acting upon this recommendation, empowered the state superintendent to decide school controversies. Rhode Island followed suit in 1847 and New Jersey in 1851.

"As may be seen from the New York State Superintendent's report in 1822 the original purpose of delegating quasi-judicial powers to the state school administrative officials was to expedite decisions and foster economy. Subsequently, many judicial opinions have sanctioned the procedure. Furthermore, the courts have recognized the desirability of placing the responsibility for decisions in professional controversies in the hands of educationally trained rather than legally trained persons. In People ex rel. Bowers v. Allen, 1897, 19 Misc. 464 [44 N.Y.S. 566], it was said that the procedure was justified because it keeps litigation in school matters 'within the compass of the department of public instruction as best fitted to mete out justice between the parties.' The technical competence of county and state superintendents to settle school controversies has been mentioned again and again by the courts of many states."

The argument has weight.

As bearing on the question see also the following cases: Bourne v. Board of Education of City of Roswell, 46 N.M. 310, 128 P.2d 733; Commonwealth ex rel. Hetrick v. School District of the City of Sunbury et al., 335 Pa. 6, 6 A.2d 279; Crawford v. Board of Education of City of Glendale, 20 Cal.App.2d 391, 67 P.2d 348; Freeman v. Medler, 46 N.M. 383, 129 P.2d 342; Frye v. School Committee of Leicester, 300 Mass. 537, 16 N.E.2d 41; Jones v. School District of Borough of Kulpmont, 333 Pa. 581, 3 A.2d 914.

We call attention also to Chapter 60, Laws 1943, which amends Section 55-1111 of the 1941 Compilation. This amendment seems to lend support to the view that "teacher" includes an "employe certified as qualified to teach", because this Section 1 of Chapter 202, L. 1941, was definitely for the protection of "teacher or other employe certified as qualified to teach", and no reason is apparent why the purpose achieved by the 1943 amendment should not be as applicable to the one group as to the other, if in fact there is any distinction, and hence there is a forceful implication that when drafting the 1943 amendment the legislators deemed "teacher" to embrace the general classification theretofore employed of "teacher or other employe certified as qualified to teach."

We are likewise confronted with an inability to discover any reason for differentiation between protections against discharge to be accorded teachers and employes certified as qualified to teach, particularly in cases where being certified as qualified to teach is a condition precedent to the employment.

Our conclusion from all of the foregoing is that a rural school supervisor is a person employed for instructional purposes and is a teacher who is entrusted with special duties of supervising public instruction in the schools, which embraces counsel and instruction of other teachers in the matter of class room instruction, as well as personal professional contact with and instruction of pupils, and hence has a teacher's status under the provisions of 1941 Comp. § 55-1113.

It follows that the judgment of the District Court must be reversed and the cause remanded with directions that it be dismissed.

It is so ordered.

SADLER, C. J., and MABRY, BRICE, and THREET, JJ., concur.