GELENCSER, Respondent, v. INDUSTRIAL COMMISSION and another, Appellants.

*April 14—May 10, 1966.*

For the appellant Board of Regents of State Colleges the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief and oral argument by *Julius Gelencser* of Middletown, New York, *in pro. per.*

HALLOWS, J. The material facts are not in dispute and the sole question is a legal one of construction of the exclusionary language of the Unemployment Compensation

Act. In defining employment under the act as it applies to a governmental unit, sec. 108.02 (5) (f) 4, Stats., provides that the term shall not include the employment of any person as a teacher in an educational institution supported wholly or substantially from public funds.[1] Nowhere in the act is the word "teacher" defined. But sec. 108.02 (21) provides undefined terms shall be interpreted in accordance with their common and approved usages and with accepted rules of statutory construction. This section further commands that no legislative enactment shall control the meaning or interpretation of any such word unless the enactment specifically refers to the chapter or is specifically referred to therein.

The trial court took the view the coverage of the Unemployment Act should be liberally construed, the exception strictly construed, and the term "teacher" as therein used meant a person actually engaged in teaching. We do not agree. We think the legislature by not defining "teacher" recognized the limited discretion in school authorities, such as the State Board of Regents, to classify and hire as teachers persons who qualify academically for teaching but are not currently assigned teaching duties. We do not hold persons academically unqualified to teach or those qualified but where no opportunity to teach exists can be hired as teachers, but that is not the case before us.

The intention of the legislature was not to restrict the word "teacher" to only those persons who are actually

---

[1] "108.02 **Definitions.** As used in this chapter:

". . .

"(5) *Employment* . . .

"(f) The term 'employment', as applied to work for a governmental unit, except as such unit duly elects otherwise with the commission's approval, shall not include: . . .

"4. Employment, by an educational institution supported wholly or substantially from public funds, of any student enrolled in such institution and carrying at least half its full-time schedule in the most recent school term, or of any person as a teacher in such institution."

engaged in instructing pupils or teaching. Sec. 108.02 (5) (f) 4, Stats., refers to the employment of a person as a teacher. The exclusion does not specifically exclude teachers in a generic sense but excludes any person who is employed as a teacher. It is customary on the university and college level to give faculty status to qualified persons other than those who are actually teaching. Nonteaching faculty members enjoy the same relative employment security of academic-year employment and tenure as do the teaching faculty members, and thus for employment purposes constitute logically one class although their specific duties in the educational system may differ.

A classification for exclusion purposes of the act based solely upon an activity which in itself is not germane to the general purpose or object of the Unemployment Compensation Act would raise serious constitutional questions. The legislature may make classifications of persons or occupations and make separate provisions for their regulation or exclude them from regulation if the classification bears a reasonable relationship to the object or purpose of the legislation. *Christoph v. Chilton* (1931), 205 Wis. 418, 237 N. W. 134; *Dumore Co. v. Smader* (1944), 245 Wis. 300, 13 N. W. (2d) 915. Those enjoying the security of employment for an academic year and tenure or eligibility for tenure compose a reasonable class. While it can be argued the word "teacher" is also open to a narrow construction and applies only to one who is actually instructing others, we cannot accept such an interpretation for the purpose of the Unemployment Act because we must follow the principle of construction that if statutory language is open to two interpretations, the construction which will save it from condemnation should be adopted in preference to one which will render it unconstitutional. *Petition of Breidenbach* (1934), 214 Wis. 54, 62, 252 N. W. 366; *Johnson v. Milwaukee* (1894), 88 Wis. 383, 60 N. W. 270.

Both parties refer to the use of the word "teacher" in other statutes. None of these sections is controlling as such but each is pertinent. In sec. 37.31, Stats., dealing with the employment and discharge of teachers in state colleges, the term "shall include all persons engaged in teaching as their principal occupation" but does not include a president or acting president of any state college. This language does not necessarily require continuous and actual teaching. Besides, the phrase "shall include" is one of enlargement and not one of limitation. In sec. 42.20 (14), which deals with teachers' and state employees' retirement, "teaching" "includes the exercise of any educational function for compensation in any of the public schools, the state colleges or the university . . . in instructing or controlling pupils or students, or in administering, directing, organizing or supervising any educational activity." In sec. 43.22, dealing with library administration, it is provided in sub. (1m) that work of a librarian employed by any school board in the library shall be deemed teaching as such term is defined in sec. 42.20. Also an illustrative meaning of the word "teacher" is found in sec. 16.08 (2) (d), pertaining to the classification of civil service which places in unclassified service all presidents, deans, principals, professors, instructors, research assistants, librarians and other teachers as defined in sec. 42.20.

In the statutes relating to Milwaukee schools, sec. 38.24 (19), Stats., defines "teacher" to include all superintendents, principals, supervisors, all high school teacher-librarians having the qualifications of teachers excepting assistant or clerk librarians and all employees defined as teachers and made eligible to membership and becoming members of the teachers' retirement fund as provided in secs. 38.265 and 38.27. This latter section provides all full-time social center, community house, adult education, or recreation directors, and certain other

employees employed by the board of school directors shall have the status, rights and privileges of regular teachers and are regular instructors within the meaning of sec. 38.24 (19).

In court decisions the word "teacher" has been given a rather broad interpretation. It was construed to include a principal as used in sec. 1 (3), ch. 29, of the laws of the special session of 1920 which required boards of school directors to fix a salary schedule for all teachers in common or graded schools. *Peterson v. Milwaukee* (1938), 226 Wis. 540, 277 N. W. 128. In *Ortega v. Otero* (1944), 48 N. M. 588, 154 Pac. (2d) 252, the court held a rural school supervisor was a teacher under a statute which did not define the term "teacher" when the supervisor had the qualifications to teach and was employed in school work. Similarly, in *McDevitt v. School Committee of Malden* (1937), 298 Mass. 213, 10 N. E. (2d) 100, a statute authorizing a school committee to change the duties of teachers on tenure at its discretion was construed to allow the committee to rescind its action of electing a teacher to the position of principal because a principal was a teacher who was entrusted with special duties of direction or management. An assistant county superintendent of schools was held to have the status of a teacher under the Teachers' Tenure Act in *State ex rel. Frank v. Meigs County Board of Education* (1942), 140 Ohio St. 381, 44 N. E. (2d) 455. Among the other cases holding supervisors to be teachers within the meaning of Teachers' Tenure Acts are *Vigil v. Barela* (1962), 71 N. M. 213, 377 Pac. (2d) 515; *School City of Lafayette v. Highley* (1938), 213 Ind. 369, 12 N. E. (2d) 927; and *Mayes v. Bailey* (1961), 209 Tenn. 186, 352 S. W. (2d) 220.

The approved rules of statutory construction require us to construe the word "teacher" in its context of the Unemployment Compensation Act and in conformity with and to promote its objects and purposes. *Boynton Cab*

*Co. v. Neubeck* (1941), 237 Wis. 249, 296 N. W. 636; *Cheese v. Industrial Comm.* (1963), 21 Wis. (2d) 8, 123 N. W. (2d) 553. While dictionary definitions are helpful in determining the common and approved meaning, they must be fitted into context. The claimant claims he was hired and worked as an assistant cataloguer and did not in fact teach and the appointment as an instructor was of no consequence to him. However, he had the qualifications of a teacher, signed his contract as a faculty member and was employed as an instructor to perform the initial duties of an assistant cataloguer, and enjoyed all the benefits and status of a teaching member of the faculty. The fact he did not actually teach is not controlling. We think he must take the disadvantages of a teacher and be excluded from unemployment benefits.

*By the Court.*—Judgment reversed, with directions to reinstate the decision of the Industrial Commission.

WILKIE, J. (*concurring*). I agree with the result reached by the majority and with their construction of the term "teacher" under the Unemployment Act as pertinent to the facts of this case. I would reverse for the additional reason that the Industrial Commission's determination that Gelencser was a "teacher" within the terms of the Unemployment Act in part involves a conclusion of law and that since that determination represents a reasonable formulation and application of the commission's interpretation of the statute this court should accept the agency's formulation and application irrespective of whether there may have been some other interpretation or application that would be reasonable.[1]

[1] *Milwaukee Transformer Co. v. Industrial Comm.* (1964), 22 Wis. (2d) 502, 510, 511, 126 N. W. (2d) 6; *Tecumseh Products Co. v. Wisconsin Employment Relations Board* (1964), 23 Wis. (2d) 118, 129, 126 N. W. (2d) 520.