BOARD OF REGENTS OF STATE UNIVERSITIES, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and another, Respondents.

*No. 21. Argued October 2, 1968.—Decided November 26, 1968.*
(Also reported in 162 N. W. 2d 650.)

For the appellant the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent Department of Industry, Labor & Human Relations there was a brief by *Arnold J. Spencer,* chief counsel of the unemployment compensation division, and oral argument by *Max J. Peltin* of Madison.

BEILFUSS, J. The issue is: Did the services of the claimant constitute employment as a teacher within the meaning of sec. 108.02 (5) (f) 4, Stats.?

The sections of the Unemployment Compensation Chapter (ch. 108) of the statutes which affect this issue are as follows:

Sec. 108.02 "(5) EMPLOYMENT. (a) 'Employment,' subject to the other provisions of this subsection means any service, including service in interstate commerce, performed by an individual for pay.
".  .  .

"(f) The term 'employment,' as applied to work for a governmental unit, except as such unit duly elects otherwise with the commission's approval, shall not include:
".  .  .

"4. Employment, by an educational institution supported wholly or substantially from public funds, . . . of any person as a teacher in such institution;

". . .

"(21) UNDEFINED TERMS. Any word or phrase used in this chapter and not specifically defined herein shall be interpreted in accordance with the common and approved usage thereof and in accordance with other accepted rules of statutory construction. No legislative enactment shall control the meaning or interpretation of any such word or phrase, unless such enactment specifically refers to this chapter or is specifically referred to in this chapter."

Sec. 108.09 (7) "(b) Any judicial review hereunder shall be confined to questions of law, and the other provisions of ch. 102 of the 1959 statutes with respect to judicial review of orders and awards shall likewise apply to any decision of the commission reviewed under this section. . . ."

Sec. 37.31 "**Teachers employed on probation; tenure, compulsory retirement.** (1) All teachers in any state university shall initially be employed on probation. The employment shall be permanent, during efficiency and good behavior after 4 years of continuous service in the state university system as a teacher. . . The term 'teachers' as used in this section includes all persons engaged in teaching as their principal occupation but shall not include any university president or acting president in his capacity as president of any of the state universities."

The notice of faculty appointment form reveals that at the time Koss was employed by the regents he had received a B.S. degree from the University of Minnesota in 1941; that he had no further formal academic training; that he had no teaching experience of any kind; that he had seventeen years of hospital administration experience. The notice of appointment further sets forth that "Mr. Koss' experience in administration qualifies him for the accounting, personnel, food service responsibilities as Ass't Director of the Student Center. Mr. Koss' salary will be paid from the Student Center revenue," and that he was employed with academic rank of "Faculty Assistant."

At the hearing before the appeal tribunal only two witnesses testified—Mr. Bjarne Ullsvik, president of Wisconsin State University, Platteville, and Mr. Robert Valzy, an assistant professor of psychology and director of the student center.

President Ullsvik testified that the Board of Regents requires that a professor must have a doctorate; an associate professor two years of graduate work; an assistant professor one and one-half years of graduate work; an instructor a Master's degree or one full year of graduate work; and a faculty assistant "anything less than that."

Mr. Ullsvik further testified:

"*Q.* Now, Mr. Koss having the academic rank of faculty assistant in being employed at the student union, could he have been given a teaching assignment? *A.* Yes, he could have been given a teaching assignment.

"*Q.* In what field? *A.* Probably in the field of business administration, because that was his major, but I must say that he was not hired with the understanding that he would have any teaching assignment, but he could have assumed a teaching responsibility in the field of business administration, but it was rather unlikely that he would have been given one but he could have.

"*Q.* Under what circumstances would he have been given a teaching assignment? *A.* I suppose since he only had a Bachelor's degree, that it probably would be on a temporary basis, someone ill, some person who goes on a leave of absence or something of that type, but I don't think we ever looked upon Mr. Koss as having the qualifications for a faculty member who would get tenure status as a full-time teacher, but we looked upon him as a person who we hoped would secure tenure status as a faculty member as assistant director of the student center."

Both the appellant, Board of Regents of State Universities, and respondent, ILHR (Koss has not appeared), rely on *Gelencser v. Industrial Comm.* (1966), 31 Wis. 2d 62, 141 N. W. 2d 898, as authority for their positions.

Gelencser, who was an attorney in Hungary, immigrated to this country in 1959. In 1962 he received a Master's degree in library science from the University of Wisconsin and was then hired by the Board of Regents to serve as an assistant cataloguer in the library at Oshkosh State University. The contract was in the usual form, entitled "Notice of Faculty Appointment," and he was given the academic rank of instructor. Although the university had a major in library science he was not assigned any teaching duties and he worked principally as a cataloguer. The contract, however, provided the initial teaching assignment was library science but the word "science" was stricken presumably before the contract was signed.

On these facts this court in *Gelencser* stated, at page 65:

"We think the legislature by not defining 'teacher' recognized the limited discretion in school authorities, such as the State Board of Regents, to classify and hire as teachers persons who qualify academically for teaching but are not currently assigned teaching duties. We do not hold persons academically unqualified to teach or those qualified but where no opportunity to teach exists can be hired as teachers, but that is not the case before us."

And concluded at page 69:

"The claimant claims he was hired and worked as an assistant cataloguer and did not in fact teach and the appointment as an instructor was of no consequence to him. However, he had the qualifications of a teacher, signed his contract as a faculty member and was employed as an instructor to perform the initial duties of an assistant cataloguer, and enjoyed all the benefits and status of a teaching member of the faculty. The fact that he did not actually teach is not controlling."

The salient factors revealed in the case are that Gelencser was hired as an instructor, he was qualified to teach, could have been assigned to teach on a permanent

basis, and that the Board of Regents has the limited discretion to classify and hire qualified teachers to perform duties none of which would include actual teaching.

Mr. Koss, however, was not considered qualified to teach, did not at any time during his three-year employment teach, even a day as a substitute, and was not hired to do so.

Sec. 108.02 (5) (f) 4, of the Unemployment Compensation Act, excludes teachers. Sec. 37.31, Stats., defines the term "teachers" as it specifically applies to the state universities as "all persons engaged in teaching as their principal occupation." Mr. Koss was not hired as a teacher. President Ullsvik testified, "I don't think we ever looked upon Mr. Koss as having the qualifications for a faculty member who would get tenure status as a full-time teacher, but we looked upon him as a person who we hoped would secure tenure status as a faculty member as assistant director of the student center."

While it may be highly desirable from the point of view of the school authorities to cloak some non-teaching personnel with the prestige and tenure benefits afforded a teacher, as we pointed out in *Gelencser,* the legislature has limited the discretion of the school authorities to do so.

We are of the opinion that where, as here, the employee was not initially hired to teach, was not expected to teach, had the very minimal qualifications to teach and did not in fact teach, even on an emergency basis, during his entire three-year period of employment, the department was justified in inferring that no opportunity to teach existed and that the employee was not employed as a teacher. We must affirm the conclusion that Koss was not employed as a teacher within the meaning of sec. 108.02 (5) (f) 4, Stats., and, therefore, eligible for unemployment compensation benefits.

*By the Court.*—Judgment affirmed.